McCANN *et al.* v. EDDY *et al.*, *Appellants*.

In Banc, March 3, 1896.

1. **Common Carrier:** CONNECTING LINE: STATUTE. Under Revised Statutes, 1889, section 944, which provides that, whenever property is received by a carrier for transportation from one place to another, such carrier shall be liable for the negligence of any other carrier to which such property may be delivered, a carrier can limit its duty and obligation to transportation over its own route.

2. ———: ———: ———: NEGLIGENCE. Such carrier can not, however, contract for a through shipment to a point beyond its line, and at the same time exempt itself from liability for the negligence of the connecting carrier which completes the transportation.

3. ———: ———: ———: FEDERAL CONSTITUTION: INTERSTATE COMMERCE. The foregoing construction given to section 944 (R. S. 1889) does not make it repugnant to the provision of the federal constitution conferring on congress alone the power to regulate commerce between the states.

133    59
135   200
133    59
138   670
72a    88
72a   307
133    59
74a    84
133    59
77a   624
f80a   17
133    59
89a   663
133    59
90a    75
133    59
e176  1488
e176  1489
133    59
e177  3650
177   1655
177   1656
101a  2453

*Appeal from Monroe Circuit Court.*—HON. THOMAS H. BACON, Judge.

AFFIRMED.

*Jackson & Montgomery* for appellants.

(1) The defendants could lawfully limit their liability to negligence or delays occurring while the cattle were in their control and on their road. The contract of shipment did contain such a lawful limitation of liability, and the evidence clearly shows that there was no delay while the cattle were on defendant's railway or under their control, therefore defendants are not liable, and their instructions should have been given and those given by the court should have been withheld. The judgment is wrong and should be reversed. *Dimmitt v. Railroad*, 103 Mo. 433; *Drew Glass Co. v. Railroad*, 44 Mo. App. 416; *Company v. Adams Ex. Co.*, 44 Mo. App. 421; *Hill v. Railroad*, 46 Mo. App. 517; *Nines v. Railroad*, 107 Mo. 475. (2) The court below ignored the rule of the above cases and construed section 944 of Revised Statutes as avoiding the clause of the contract limiting the liability. Such construction puts the statute in conflict with the constitutions of the state and of the United States, because it is made a regulation of interstate commerce. Const. of U. S., art. 1, sec. 8, and tenth amendment; Const. of Mo., art. 2, sec. 2.

*J. H. Rodes* and *R. B. Bristow* for respondents.

(1) By special contract, appellant voluntarily undertook a through contract of shipment, to transport and deliver to point of ultimate destination, to wit: "From Stoutsville, Missouri, to Union Stock Yards,

Chicago, Illinois." Their connecting carrier (the Wabash) was, therefore, their agent, and not respondents'; and appellants, by their contract, thereupon became not only liable for their own negligence, but also for the negligence of their agents, the Wabash Railroad Company; and the trial court properly so held. *Machine Co. v. Railroad*, 70 Mo. 674; *Halliday v. Railroad*, 74 Mo. 162; *Loomis v. Railroad*, 17 Mo. App. 350; *Railroad v. McCarthy*, 96 U. S. 266; 1 Wood's R'y Law, sec. 190, p. 545; *Dimmitt v. Railroad*, 103 Mo. 433; *Baker v. Railroad*, 34 Mo. App. 112; *Railroad v. Lockwood*, 17 Wall. 357; Wharton on Neg., sec. 589. (2) Appellants could not stipulate so as to relieve themselves against their own, or their agent's negligence. *Halliday v. Railroad*, 74 Mo. 162; *Railroad v. Pontius*, 19 Ohio St. 221; *Condict v. Railroad*, 54 N. Y. 500; *Snider v. Ex. Co.*, 63 Mo. 376; *Ball v. Railroad*, 83 Mo. 574; *Brown v. Railroad*, 18 Mo. App. 568. (3) While it is conceded that the carrier may (notwithstanding R. S., 1889, sec. 944) limit its liability to negligence occurring on its own road, provided it contracts to carry only to the terminal point, stating it will carry goods no further, or, what is equivalent, limits its liability to negligence occurring on its own line; yet, it can not make a through contract, or, to undertake to ship and deliver to a point beyond its own line, unequivocally, by contract, binding itself to carry and deliver to a point of destination, and in the same contract limit its liability to negligence occurring while on its own road. *Halliday v. Railroad*, 74 Mo. 162; Lawson on Contracts, 225; *Bank v. Express Co.*, 93 U. S. 174; *Drew Glass Co. v. Railroad*, 44 Mo. App. 416; *Company v. Adams Ex. Co.*, 44 Mo. App. 421; *Baker v. Railroad*, 34 Mo. App. 112; *Myrick v. Railroad*, 107 U. S. 106. (4) There was an expressed, but no real consideration for said alleged releases, by one of which

appellants sought to release themselves from liability
of every kind after said live stock shall have left their
road.   Plaintiff's uncontradicted evidence shows lack
of consideration for such release.   *McFadden v. Rail-
road*, 92 Mo. 351; *Fountaine v. Sav. Inst.*, 57 Mo. 561;
*Hollocher v. Hollocher*, 62 Mo. 267; *Edwards v. Smith*,
63 Mo. 119; *Doan v. Railroad*, 38 Mo. App. 420; *Mc-
Millan v. Railroad*, 16 Mich. 116.   (5) The promise to
perform a legal obligation can, of itself, furnish no
consideration for the release of, or the exemption from,
the liability of the defendant as common carriers (hav-
ing voluntarily assumed such relation by a contract to
through carry).   *Bechhort v. Hoffman*, 19 N. Y. S. 472;
*Bush v. Rawlins*, 14 S. E. Rep. 886; Lawson on Con-
tracts, 103.   (6) Appellant's second point has no appli-
cation to the law under the plaintiff's view of the case.
The statute referred to has been construed to be no lim-
itation upon the right to contract.   *Dimmitt v. Railroad*,
103 Mo. 433.

MACFARLANE, J.—This action is to recover dam-
ages against defendants, as receivers of the Missouri,
Kansas & Texas Railway Company for negligent duty
in the transportation and delivery of ninety-five head
of cattle from Stoutsville, in Monroe county, in this
state, to Chicago, in the state of Illinois.

Stoutsville is a station on the road operated by
defendants.   Hannibal is the eastern terminus of their
road.   From that point the Wabash Railway Company
operates a road to Chicago.   The cattle were delivered
by defendants to the Wabash company, in a reasonable
time and in good order, by which they were carried to
Chicago.   The negligence complained of was com-
mitted on the Wabash road, and by its employees.

So much of the contract under which the shipment

was made, as is necessary to an understanding of the questions involved, is as follows:

*Rules and Regulations:* "In case the owner or consignor agrees to hold these receivers free from liability · from any and all causes enumerated in the following contract, also agrees to load, feed, water, and attend to the stock himself, etc., as specified therein, the rates agreed upon and specified in the contract will be given."

*Live Stock Contract*, Executed at Stoutsville Station, Mo., Nov. 12,. 1890:

"This agreement made between George A. Eddy and H. C. Cross, receivers of the Missouri, Kansas & Texas Railway, parties of the first part, and M. B. Smizer, party of the second part, witnesseth that, whereas, the receivers of the Missouri, Kansas & Texas Railway transport the live stock as per above rules and regulations, and which are hereby made a part of this contract, by mutual agreement between the parties hereto; now, therefore, for the consideration and · mutual covenants and conditions herein contained, said party of the first part is to transport for the second party the live stock described below, and the parties in charge thereof as hereinafter provided, namely: six cars said to contain 95 head of cattle, m. or l. o. r., *from Stoutsville Station, Missouri, to Chicago, Illinois, station,* consigned to Brown Bros. & Smith, care Union Stock Yards at Chicago, Illinois, at the through rate of 17 1-2 c. per hundred pounds, *from Stoutsville, Missouri, to Chicago, Illinois,* subject to minimum weights applying to cars of various lengths as per tariff rules in effect on the day of shipment, the same being a special rate, lower than the regular rates, or at a rate mutually agreed upon between the parties, for and in consideration of which said second party hereby covenants and agrees as follows:"

The first and thirteenth of these covenants are as follows:

"*First.   That he hereby releases the party of the first part from the liability of common carrier in the transportation of said stock and agrees that such liability shall be that of a mere forwarder or private carrier for hire.* He also hereby agrees to waive, release, and hereby does release said first party from any and all liability for, and on account of, any delay in shipping said stock, after the delivery thereof to its agent, and from any delay in receiving same after being tendered to its agent."

"*Thirteenth.*  And it is further stipulated and agreed between the parties hereto, that in case the live stock mentioned herein is to be transported over the roads or road of any other railroad company, the said party of the first part shall be released from liability of every kind after said live stock shall have left its road, and the party of the second part hereby so expressly stipulates and agrees, the understanding of both parties hereto that the party of the first part shall not be held liable for anything beyond the line of the Missouri, Kansas & Texas Railway, excepting to protect the through rate of freight named herein."

The contract was signed by both parties, and under it defendants claim exemption from liability.

Defendants asked, but the court refused to give, this instruction:

"The court instructs the jury that under the contract read in evidence, under which plaintiff's cattle were shipped, the defendants are not liable for any damages sustained by delays or otherwise, after said cattle were delivered by defendants to the next connecting carrier."

The court of its own motion gave this instruction:

"If, from the evidence, the jury find that beyond the limit of a reasonable time for the delivery of plaintiff's cattle at the Union Stock Yards at Chicago, Illinois, the Wabash Railway Company negligently delayed said delivery and thereby directly caused pecuniary damage to plaintiffs in the disposition of said cattle, the jury will find for plaintiff, and in default of such finding the jury will find for defendant."

The evidence tended to prove the negligence charged and the resulting damages. The judgment was for plaintiffs and defendants appealed.

I.   This appeal involves the interpretation of the contract under which the cattle were shipped and a determination of the effect that should be given the clause exempting defendants from "all liability of every kind after the cattle left its road."

As the contract must be construed so as to give proper effect to the statute, the interpretation of section 944, Revised Statutes, 1889, in its application to the contract is also necessary. That section is as follows:

"Whenever any property is received by a common carrier to be transferred from one place to another, within or without this state, or when a railroad or other transportation company issues receipts or bills of lading in this state, the common carrier, railroad, or transportation company issuing such bill of lading shall be liable for any loss, damage, or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad, or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a

proper action, the amount of any loss, damage, or injury it may be required to pay to the owner of such property, from the common carrier, railroad, or transportation company, through whose negligence the loss, damage, or injury may be sustained."

This section was construed in the *Dimmitt* case, 103 Mo. 440, and its application to the contract there in question was determined. In that case it was held that the general effect of the statute, and its evident purpose, was to apply to common carriers the English rule of duty and liability in respect to the carriage of property beyond their own route, as distinguished from the American rule, which was at the time recognized as the law in this state. In that case the goods were consigned to a point beyond the route of the receiving carrier, and there was no express limitation by contract not to carry to their destination. The court held that, under the statute, the receiving carrier was liable for the loss of the goods occurring through the negligence of the carrier to which it had delivered them for transportation to their destination.

This ruling was in accord with the decisions of the English courts, but under the law as it existed in Missouri, prior to the statute, upon the facts shown to have existed, the receiving company would not have been liable for the loss. There is no doubt the statute by its very terms has the effect of applying the English rule, so far as it makes the receiving carrier responsible for the defaults of other carriers through whose agencies it undertakes to complete the contract of carriage. This is as far as the decision in the *Dimmitt* case goes.

But the statute can only be held to adopt so much of the English rule as is consistent with it. It can not properly be held to abrogate the existing law in this state unless inconsistent with it. The statute, ingrafted

upon the law of this state, as it then existed, makes the rule by which we must be governed. The English law does not make it.

To the extent, then, that the statute declares the English rule, the decisions of the English courts would be authority for its interpretation, but they would not be authority where the statute and the rule conflict. The statute must be interpreted in the light of our own law, and so far as possible in conformity to it.

In the *Dimmitt* case, *supra*, the court says: "By its provisions the act of acceptance by a common carrier of property to be transferred to a place beyond the terminus of its route is evidence of a contract to carry such property to the place of its destination. The act of issuing a receipt or bill of lading for property to be transferred to a place beyond the terminus of the route of a common carrier is evidence of a contract by such carrier to carry such property to the place of its destination. This *prima facie* case the statute makes for the plaintiff on the facts stated. In order to defeat it, the defendant must show, that by specific agreement it only contracted to carry the property to the terminus of its own line, or, what is equivalent, that there was a specific agreement that it was to be liable only for loss or damage occurring on its own line."

This is a fair statement of the interpretation given by the English courts to contracts for transportation beyond the route of the receiving carrier. Hutchinson on Carriers, sec. 147; Lawson, Cont. of Car., sec. 238.

The law as stated is also within the terms of the statute and is inconsistent with the law of this state as previously declared by this court. *Coates v. Express Co.*, 45 Mo. 238; *Snider v. Express Co.*, 63 Mo. 376.

The provision of the statute is that "whenever property is received by a common carrier to be trans-

ferred from one place to another." This language does not restrict, but rather recognizes, the right of the carrier to limit its contract of carriage to the end of its own route, and there deliver the property to the connecting carrier.

There can be no doubt then, that, under the statute, as well as under the English law, the carrier can, by contract, limit his duty and obligation to carriage over its own route.

But it seems that, under the decisions of the English courts, a carrier can also limit his liability to a loss or damages occurring on his own route by specific agreement that it should only be so liable.

In the *Dimmitt* case the rule is stated to its full extent, though unnecessary to the decision in that case, there having been no attempt to make such limitation.

While, under the decisions of this court, it had been held that a carrier could by contract limit its common law liability of insurer, it was, before the statute, and has been since, uniformly held, that he could not, by contract or otherwise, relieve himself from liability for loss or damage occasioned by his own negligence or that of his agents or employees. Such was the law when this statute was enacted. There is nothing in the statute that indicates an intention to change it. Indeed it seemed to be recognized, for the statute by its terms only declares a liability for loss or damage caused by negligence.

The dictum of the court in the *Dimmitt* case to the effect that an agreement that a carrier should only be liable for loss or damage occurring on its own line is equivalent to an express contract to carry the property only to the terminus of its own line, can not be taken as the law of this case, where there is an express contract and also an agreement for nonliability. Where the original undertaking is in doubt, such an

agreement might be evidence of the intention of the parties in respect thereto. This question is not involved here and need not be decided.

We can not, therefore, give such an interpretation to the statute as would permit a carrier to contract for a through shipment and at the same time exempt himself from liability on account of the negligence of connecting carriers. Such an interpretation would in effect operate as a repeal of the vital provisions of the law which declares a conclusive liability in such case. The statute does not undertake to change the law in respect to liability of a carrier for his own negligence, but to extend it to connecting carriers as well and declare a liability for negligence without regard to which was in fault.

Under these views of the law, no difficulty is found in giving construction to the contract. The agreement to carry from Stoutsville to Chicago is absolute and unconditional. The thirteenth condition or covenant can only be regarded as an attempt, on the part of defendant, to relieve itself from the responsibility of answering for the negligence of the carrier by which it undertook to complete the contract. The statute forbids such a qualification of the contract. It can only be held to relieve defendant from its common law liability of an insurer.

The ruling of the court in respect to giving and refusing the instructions mentioned was correct.

II. We are unable to see, as contended by defendant, that the construction we give this statute makes it repugnant to that provision of the constitution of the United States which gives to congress alone the power to regulate commerce among the states.

The act in no way operates as a regulation of trade and business among the states. No burden or restriction on transportation is imposed. Carriers are left

free to make their own contracts in regard to compensation for their services for transportation between the states, subject to congressional regulations.

The statute merely prohibits a carrier, who, by contract, undertakes to transport property to a point beyond its own route, from relieving itself of responsibility for neglect to properly perform its duty. It only imposes the duty and liability which the law, from considerations of public policy, imposes upon all common carriers in the transportation of property over their own lines, though they may extend into other states.

A statute of Iowa which provided that no contract of a common carrier should exempt it from its common law liability was held by the supreme court of that state not to be in conflict with the commercial power of congress prescribed by the constitution. *Hart v. Railroad*, 69 Iowa, 490. See, also, to the same effect, *Solan v. Railroad*, 63 N. W. Rep. (Iowa) 692, and *Baggs v. Railroad*, 14 L. R. A. (N. C.) 596. The judgment is affirmed. All the judges concur, except SHERWOOD, J., who dissents.