THE STATE v. JOSEPH ROSENBERG and HARRY ROSENBERG, Appellants.

Division Two, May 7, 1901.

1. **False Pretenses:** GOODS: SALE: DELIVERY: PAYMENT. Revised Statutes 1889, section 3564, provides that every person who shall contract with another person for the purchase of any goods to be paid for on delivery, with the intent to cheat and defraud such person, and in pursuance of such intent shall sell the property after obtaining possession, or secrete the same before paying the owner, shall be punished in the same manner as for feloniously stealing the property. *Held*, that, where defendant was indicted for obtaining possession of sugar with the intent to cheat and defraud the seller, it was proper to charge that if the jury should find from the evidence that, by the terms of the purchase of the sugar, it was agreed that it should be paid for on delivery, and that it was to be received by the defendant at plaintiff's warehouse, and to be paid for immediately thereafter at defendant's store, then such purchase was for payment on delivery, but that if the jury should find that the sugar was sold on credit, and to be paid for at a time subsequent to delivery, the defendant should be acquitted.

2. ———: ———: POSSESSION: FRAUD: INTENTION NOT TO PAY. B sold defendant twenty barrels of sugar, to be paid for on delivery. B's clerk delivered five barrels to H, defendant's son, at B's warehouse, on March 30, at 2 p. m., and at 3:30 called at defendant's store, but H had not returned and did not return that afternoon. On March 31 the clerk stayed at defendant's store most of the day, but H did not return, and the sugar could not be found in the store, and on April 1 it was closed by the sheriff. On March 30 defendant's store was well stocked with goods, and on that day and the day following dray loads of goods were removed without being checked, and subsequently a part of them were found hidden in a barn, and another portion at a place belonging to defendant's son-in-law, in another State, and another part in the basement of a house in Chicago, to which defendant had removed. H testified that he delivered

State v. Rosenberg.

the sugar to his father's customers without returning to the store. The other fifteen barrels were delivered to an employee of an express company, who left them on a depot platform without taking a receipt for them. *Held*, that the evidence was sufficient to support a verdict finding defendant guilty of obtaining possession of the sugar with the intent to cheat and defraud the seller.

3. ———: ———: ACCOMPLICE: FATHER AND SON: SUBORDINATE CAPACITY. Where defendant's son H, a young man of twenty, hauled away from the warehouse goods which defendant had purchased with the intent to defraud the seller, under a contract to which H was not a party, a conviction of H for obtaining possession of the goods with intent to cheat and defraud the seller can not be sustained, since he acted in a subordinate capacity, under the control of his father.

4. ———: ———: SON AIDING FATHER: INSTRUCTION: HARMLESS ERROR. Where defendant purchased goods to be paid for on delivery, and his son hauled them, and both were indicted for obtaining possession of the goods with intent to defraud the seller, the fact that the court erroneously charged the jury relative to the liability of the son in aiding and abetting defendant in obtaining possession of the goods was not prejudicial to defendant.

5. ———: ———: PAYMENT ON DELIVERY: AGREEMENT: INSTRUCTION: NON-PREJUDICIAL. R and H were indicted for obtaining possession of goods with intent to defraud the seller, and the court charged that both might be convicted, or one acquitted and the other convicted, or both acquitted, according as the jury should find the facts under the instructions of the court, and that the jury should return separate verdicts as to each defendant. *Held*, that a subsequent instruction that, before the jury could find either defendant guilty, they must find from all the evidence that the goods in question were to be paid for on delivery, under the terms of the sale and purchase, and that there was an express agreement to that effect at the time between the seller and the defendants, was not prejudicial to either defendant, since it required the State to prove more than was necessary.

6. ———: ———: PURCHASES FROM OTHER PARTIES: INTENT TO DEFRAUD: EVIDENCE. Where defendant was indicted for obtaining possession of goods by promising to pay for them on delivery, with intent to defraud the seller, evidence of purchases from other parties with a fraudulent intent was admissible to show defendant's intent in purchasing the goods in question, though all of the other purchases were not payable on delivery.

7. **Appellate Practice**: INCOMPETENT EVIDENCE: OBJECTION: REVIEW. An objection to evidence merely that it was incompetent was not sufficient to present any question for review.

8. ———: INSTRUCTION: INSUFFICIENCY: NO EXCEPTIONS. Where the trial court's instructions were not sufficiently full in not pointing out what parts of certain evidence were admissible, and in not restricting certain evidence to the question of intent, but defendant did not except to the instructions on that ground, he can not question their sufficiency on appeal.

9. **Criminal Law**: REHEARING: RECOGNIZANCE: FAILURE TO COMPLY WITH CONDITIONS. Where a judgment of conviction of a felony was affirmed on appeal, and defendant did not comply with the conditions of his recognizance, but secreted himself, a motion for rehearing pending such concealment will not be considered.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED AS TO JOSEPH ROSENBERG; REVERSED AS TO HARRY ROSENBERG.

*Chester H. Krum* and *Winkelman & Baer* for appellants; *Morton Jourdan* of counsel.

(1) The demurrer to the evidence as to Harry Rosenberg ought to have been sustained, and the instruction given, under which the jury were left to find him guilty, was absolutely without warrant of law. There was no evidence that Harry Rosenberg was interested in his father's business, or that he made the contract for himself. On the part of the State the evidence all showed that the contract was that of Joseph Rosenberg. The account made out and sued upon was against him, and him alone. On the part of the appellants, the evidence proved that there was no joint interest. (2) The demurrer to the evidence made by both of the appellants ought to have been sustained. (a) The indictment being

based on section 3564, Revised Statutes 1889, the State was bound to prove an express contract to pay cash on delivery. State v. Wilson, 143 Mo. 346. (b) When Boswell contracted to deliver at the Niederhut warehouse, and Rosenberg contracted to pay at his store more than three miles distant, and when his son returned to the store, there was no such contract. Cash, means money in hand. In re Palliser, 136 U. S. 263. Cash on delivery, means what it says. Comm. v. Fleming, 130 Pa. St. 157; Express Co. v. Leseur, 39 Ills. 333; Collender v. Dinsmore, 55 N. Y. 205. (3) The testimony of Stein should have been limited and restricted as evidence against Joseph Rosenberg only. The People v Davis, 56 N. Y. 95; Harriman v. Stone, 57 Mo. 93; People v. Maunausen, 60 Mich. 17; State v. Duncan, 64 Mo. 262.

*Edward C. Crow,* Attorney-General, for the State; *Thos. B. Harvey* and *H. A. Loevy* of counsel.

(1) If the contract to pay for the sugar was solely the contract of Joseph as purchaser, yet, if Harry aided him in effecting said contract, or persuaded Boswell to make the contract of sale, and did so with the felonious purpose of aiding Joseph in perpetrating an offense, he is equally guilty, and Joseph's contract and other acts in the transaction become the contract and acts of Harry. (2) Evidence showing that defendants had bought large bills of goods from other merchants about the same time, and had then hastily sold them at much below market value, or had secreted and run the goods out of the city, was pertinent as tending to show the bona fides of the particular purchase alleged in the indictment. The instructions of the court told the jury plainly that it was the guilt of the defendants in the sugar transaction that they were to determine and the jury could not possibly have thought that

they were at liberty to convict them of some other transaction. It is the duty of the court to instruct on all questions of law arising in the case and necessary for the determination thereof, and whether requested to do so or not.   State v. Henson, 106 Mo. 66; State v. Nelson, 118 Mo. 124.   But it is not the duty of the court to instruct upon merely collateral matters.   State v. Klumf, 16 Mo. 385; State v. Branstetter, 65 Mo. 149; State v. Kilgore, 70 Mo. 546; State v. Murphy, 118 Mo. 7; State v. Brooks, 92 Mo. 586.

SHERWOOD, P. J.—Section 3564, Unrevised Stat. 1889, contains, among other provisions, this one: "Every person who shall, with the intent to cheat and defraud another, agree or contract with such other person or his agent, clerk or servant for the purchase of any goods, wares, merchandise or other property whatsoever, to be paid for upon delivery, and shall, in pursuance of such intent to cheat and defraud, after obtaining possession of any such property, sell, transfer, secrete or dispose of the same before paying or satisfying the owner or his agent, clerk or servant therefor, shall, upon conviction therefor, be punished in the same manner and to the same extent as for feloniously stealing the money, property or other thing so obtained."   And on this portion of such section was this prosecution based.

The count on which the trial occurred, was the following:

"And the grand jurors, aforesaid, now here in court duly impanelled, sworn and charged, upon their oath aforesaid, do further present, that Joseph Rosenberg and Harry Rosenberg on the thirtieth day of March, one thousand eight hundred and ninety-eight, at the city of St. Louis, aforesaid, with the felonious intent to cheat and defraud one M. F. S. Boswell, fraudulently, unlawfully, designedly and feloniously did agree and contract with the said M. F. S. Boswell, his agent and

clerk, for the purchase of certain goods, wares and merchandise, to-wit: 7,149 pounds of granulated sugar of the value of $361, at and for the price of $361, lawful money of the United States of America, to be paid for by the said Joseph Rosenberg and Harry Rosenberg in cash, upon delivery of said goods, wares and merchandise, by the said M. F. S. Boswell to them, the said Joseph Rosenberg and Harry Rosenberg, in the city of St. Louis, Missouri; and that the said Joseph Rosenberg and Harry Rosenberg, in pursuance of said fraudulent and felonious intent as aforesaid, did then and there fraudulently, unlawfully, designedly and feloniously obtain possession of said goods, wares and merchandise, before described, under said contract and agreement as aforesaid, and in further pursuance of the said fraudulent and felonious intent before described; and that the said Joseph Rosenberg and Harry Rosenberg, after so obtaining the possession of the said goods, wares and merchandise as aforesaid, fraudulently, unlawfully, designedly and feloniously did then and there sell, transfer, secrete and dispose of the said goods, wares and merchandise in a manner and to other persons to these grand jurors unknown, before paying or satisfying the said M. F. S. Boswell, the owner of said goods, wares and merchandise, or his agent, servant or clerk therefor; and that the said Joseph Rosenberg and Harry Rosenberg have feloniously and fraudulently failed and refused, and still fail and refuse, to pay to the said M. F. S. Boswell, his agent, clerk or servant, the purchase price of said goods wares and merchandise, by payment in cash, as agreed upon as aforesaid, or by payment in any other manner whatever, or to satisfy them therefor in any manner, with the felonious intent to cheat and defraud the said M. F. S. Boswell, against the peace and dignity of the State."

The result of the trial was the conviction of Joseph and Harry Rosenberg, and the sentence of the former to four, and

the latter to five years' imprisonment in the penitentiary.

The portion of the section already quoted requires three things in order to constitute the offense here charged: First, an agreement or contract made by the accused with another person or his agent, clerk or servant for the purchase of goods, etc., to be paid for upon delivery. Second, with intent to cheat and defraud such other person of whom the goods, etc., are directly or indirectly purchased. Third, after thus obtaining possession of such goods with intent to cheat and defraud and in pursuance of such intent, to sell, transfer, secrete or dispose of the same before paying or satisfying the owner, or his agent, clerk or servant therefor.

The question, therefore, arising upon this record, is, whether the evidence adduced at the trial contains the constituent elements aforesaid of the offense in question either as to one or both defendants. Subordinate to this primary question is the one relating to the validity and sufficiency of the instructions given. Other points are presented relative to the sufficiency and competency of, and the duty of the court in respect to, certain evidence.

Concerning the testimony touching the guilt of Joseph Rosenberg, so far as concerns an intent to cheat and defraud, it is ample.

Ewald, the clerk of Boswell, testified he sold Joseph Rosenberg on March 30, 1898, fifteen barrels of sugar amounting to $361. Rosenberg was to get the sugar from the Niederhut warehouse where Boswell had it deposited, and Ewald was to collect that amount immediately after the goods reached the store of Rosenberg. The goods were to be paid for immediately on their delivery at the store of Rosenberg. Harry Rosenberg, twenty years old, attended to the business for his father, Joseph Rosenberg, and at the son's request, Boswell, then at the warehouse, added five more barrels to the lot sold,

Harry stating to Boswell he wanted five more barrels of sugar. Ewald further states that Rosenberg was to haul the sugar with his own wagon from the warehouse to his own store; that he Ewald got the weights about the first load of sugar hauled from the warehouse; the sugar being delivered to Rosenberg's wagon at the warehouse and the weights of same were brought to Boswell's place of business, when Ewald, taking them, immediately started to Rosenberg's store to collect the amount due. He arrived there about 3 :15 the same afternoon the sugar was sold; the contract of the sale of sugar having occurred at 2 o'clock of the same afternoon at Rosenberg's store; the witness stating he did this to give Rosenberg plenty of time to reach the store with the sugar.   When witness reached the store, Harry Rosenberg had not yet returned, and finding he had not, witness waited about half an hour, and as Harry Rosenberg still did not return, witness went out and attended to some business in the neighborhood, and returned again and waited at the store another half hour, but as Harry Rosenberg still failed to return, witness went out again and so on throughout the afternoon, but Harry Rosenberg failed to return, nor was the sugar delivered at the store that afternoon or subsequently.   At half past 8 o'clock witness returned again the next morning, but still no Harry Rosenberg, and no sugar, and the sister of the latter, then at the store where she stayed, told witness that her brother had not been at the store since the preceding afternoon nor had he brought the sugar to the store.   Witness examined the store thoroughly, but could find no trace of the sugar.   Witness stayed at Rosenberg's store all the morning; returned to Boswell's store and was sent back by him and remained at Rosenberg's store all the afternoon till about 5 :30 o'clock, but found nothing of the sugar or of Harry Rosenberg, nor did the features of Joseph, his father, appear in evidence and the same result happened on the first of April, when witness found the place

closed by the sheriff. This witness further states that when he went to Rosenberg's store on the thirtieth of March, 1898, the store was well stocked with groceries of different kinds; that on his return on that afternoon in order to collect the bill for the sugar, he observed that the goods in the store were being hauled away with remarkable rapidity as if the occupants were moving; that the goods were not checked as moved, but were loaded on to the wagons in a pell-mell, helter-skelter sort of fashion, the nearest goods to hand being taken and loaded, and this moving process was still going on on March 31, all day long. Two or three different large drayage wagons were there and being filled and men also from the neighborhood were coming in and getting boxes of goods, such as a case of canned goods and a sack of flour; and yet Rosenberg's store was a wholesale establishment.

Boswell's testimony supports that of his clerk as to the terms of sale of the sugar, and further shows that no part of the price of the sugar was ever paid, nor any of the sugar recovered.

It was in evidence also that in the month of February hundreds of barrels of flour were bought of one firm by defendant Joseph Rosenberg to be delivered, the most of it in March, 1898, and all of it was so delivered at the warehouse of vendors, Tenth and Spruce streets, St. Louis, on or before March 30, except forty and forty-five barrels delivered at such warehouse on the thirty-first of March and first of April, respectively. This flour was receipted for at the warehouse by Harry Rosenberg. This flour was not to be paid for until April 1, 1898, and was not paid for nor any of it paid for or recovered. This purchase amounted to over $2,000. Joseph Rosenberg also bought of the Fischer Flour Company one hundred barrels of flour on the third of March, 1898, and the deliveries were made on the tenth, nineteenth, twenty-sixth and

thirtieth of that month; $77.25 of the flour was delivered in sacks on the date last mentioned, and was to be paid for on the latter part of March or the first of April, and amounted in all to $519.25.   Fischer went by on the last-named date to collect the bill, but found the premises in the hands of the sheriff, and never received pay for his flour, nor recovered it.   The sheriff, it appears, found but a small remnant of the large stock of goods on which to levy his writ or writs of attachment.

Nor were N. K. Fairbanks & Company, soap manufacturers, neglected by defendant Joseph Rosenberg in his business ventures; for, in the month of March, 1898, he bought of that company three hundred and sixty cases of soap, the bill amounting to about $900.   This soap was to have been delivered in April, 1898, but on the representation that the soap was needed before that time, Joseph Rosenberg was allowed to take the soap from the factory about March 25.   A portion of this soap was, it seems, recovered, but no payment was made on the bill.

Henry Meyers also was induced to sell to Joseph Rosenberg on the nineteenth of February, 1898, sugar to the amount of over $700.   This was to be a cash transaction, and the goods to be delivered on first to fifteenth of March, 1898.   They were so delivered, but defendant Joseph paid no money on the bill.   Meyers, it seems, was the only one of nine others, outside of Boswell, whose goods were to be paid for on delivery. Meyers was never paid anything on his bill but did recover something through attachment process.

Property from Rosenberg's store was afterwards found concealed in a stable near Blair and Cass avenues, and some in a store about 1500, South Broadway.   Some, it appears, was sent to Belleville, Illinois, where Joseph had a son-in-law named Rubenstein, and this property from Belleville, as well as other, was afterwards seen in Chicago in the basement of a

house occupied by Joseph as a dwelling, some of the property being marked "J. Rosenberg, St. Louis;" and other unmarked. This property was in such quantity as to require a team nearly three days to remove it to Rosenberg Brothers' wholesale grocery house in Chicago, established in January, 1899.

Of the sugar bought of Boswell, five of the twenty barrels bought were delivered to Harry Rosenberg at the Niederhut warehouse in a wagon, as he testifies, and he also testifies that under his father's orders he distributed them among his father's customers immediately on receiving them prior to twelve in the morning of March 30; that for the other fifteen barrels he sent to Steinberg's Express Company an order to haul them, which was done. Anderson, a negro, drove the express or transfer wagon up to Rosenberg's store, and from that point Harry Rosenberg, under his father's orders went with Anderson and delivered the sugar to his father's customers, and that the fifteen barrels were never sent by Anderson to any railroad depot in St. Louis. Anderson, on the contrary, said he received an order from Steinberg to get the sugar and take it to some depot in St. Louis, which he did; left it on the platform and took no receipt for it, and does not remember what depot it was, whether it was the "K." line or Iron Mountain; it was one of the two.

On the part of the defendant it was attempted to be established that the sugar was not bought for cash, and there was testimony to that effect. In order to show this to be true, the bill made out by Boswell was exhibited, and it was in this form:

"St. Louis, March 30, 1898.
"Mr. Jos. Rosenberg, City,

"Bought of M. F. S. Boswell, Wholesale Broker and Commission Merchant, 510 South Seventh Street,

"Terms Net Cash, less one per cent.

"20 bbls. Germania Gran. Sugar, 7,149, $5.05 .... $361.02
  "Less one per cent cash .................    3.61

                                  "$357.41."

But Boswell's explanation of this was very satisfactory on this point, to-wit, that, "Terms one per cent is a trade discount that we give in sales of that kind, and it means 'cash on delivery.'"

On the basis of facts already set forth, this portion of instruction 8, given by the court, embodies the correct theory of the law: "That if you find and believe from all the evidence that by the terms of the purchase and sale of said sugar, it was agreed the same should be paid for upon delivery; and, further, that the sugar was to be received by the defendants at the Niederhut warehouse, referred to in the evidence, and to be paid for immediately thereafter, at the store of Joseph Rosenberg, in this city, referred to in the evidence, then such purchase and sale was for payment on delivery. But on the other hand, if you find and believe from all the evidence in the case that the said sugar was sold on credit, and was to be paid for at a time subsequent to the delivery thereof, then you must acquit the defendants."

Were the law otherwise, it would be most unreasonable, absurd and unjust; we will not give it such an impracticable construction. Such a construction would favor only sharpers and thieves, and embarrass honest men.

As there was sufficient evidence to establish the State's theory of a contract for payment on delivery, and abundant evidence to show as well fraudulent intent on the part of Joseph Rosenberg, in making the contract for the sugar, and that in pursuance of such fraudulent intent, he, after obtaining possession of the sugar, sold, transferred, secreted or disposed of

Vol 162 mo—24

the same before paying, etc., the case of the State is made out against such defendant. If actuated by such fraudulent intent, a purchaser can not, after gaining possession of the property of another, sell it, even in the course of ordinary business before paying for it, any more than he can transfer, secrete or otherwise dispose of it before paying for it. If the fraudulent intent existed, and the sugar was sent down to a railroad depot, and dumped down on the platform, no receipt therefor being taken, such a transaction would fall under the purview and ban of the statute under discussion, and so, in like circumstances also, if the goods were sold and distributed among customers. The law does not permit Peter to be robbed in order to pay Paul.

But as to defendant Harry Rosenberg, we have been unable to find anything in the evidence to satisfy us beyond a reasonable doubt that he, being a minor and under the control of his father, was guilty of the crime imputed to him. Indeed, under the very terms of the statute and of the recited facts in the case at bar, it was impossible for him to be a party to the contract; nor was he so regarded, as fully and clearly appears by the title and terms of the bill rendered by Boswell. And so far as aiding and abetting his father is concerned, we do not find it necessary to pass upon the question whether the statute, drawn in the precise manner it is, will admit of the principle of aiding and abetting, since nothing is found in the record to convince us that the boy did anything more than a son or clerk might do in his subordinate capacity, without incurring criminal liability.

But the fact that the court erroneously gave an instruction as to Harry Rosenberg, relative to aiding and abetting, could not prejudice the propriety of instructions in regard to the father. And speaking of the instructions, the court, in respect to defendants, told the jury: "You may convict them

both, or you may acquit one, convict the other, or you may acquit them both, according as you may find the facts to be from all the evidence in the case and under the instructions given by the court. You will, however, return separate verdicts as to each of the defendants."

Subsequently, however, the court instructed the jury: "Before you can find either defendant guilty you must find from all the evidence that the sugar in question was, under the terms of sale and purchase, to be paid for upon delivery, and that there was an express agreement to that effect at the time between the said Boswell or his agent and clerk and the defendants."

But this instruction could not, when considered in connection with the one previously quoted, mislead the jury or prejudice either of defendants, since it required more to be proved than the State was required to prove.

Relative to admission of evidence as to Joseph Rosenberg having made purchases from Henry Meyers with fraudulent intent, this evidence was indubitably admissible in order to show such intent. It is true that with only Meyers was made a contract to pay cash on delivery, but a similar fraudulent intent appeared on the part of Joseph Rosenberg, in the purchases he made from others, though the cash was not to be paid on delivery.

Besides, no such objection was made to the introduction of such evidence as this court in a long line of decisions has recognized as valid. Merely to say, "We object to that as not competent," is, under our rulings, no objection at all.

In reference to admission of evidence as to what transpired in Chicago between Joseph Rosenberg and his son Harry and Isaac Stein, some eight months after the occurrences in St. Louis, some of the evidence thus admitted as to admissions of Joseph was admissible and if it was thought that the instruc-

tions given by the court were not sufficiently full (as doubtless they were not) to point out to the jury what portions of such evidence was admissible, and what not; and if it was thought that the instructions given were not sufficiently full (as doubtless they were not) in pointing out the purpose for which evidence as to other fraudulent intents had been admitted, and restricting such evidence to such purpose, then the defense should have excepted on that ground as pointed out in State v. Cantlin, 118 Mo. 100, and numerous other subsequent cases, that the court had not instructed the jury on all questions, etc.

For the reasons aforesaid, the judgment will be affirmed as to Joseph Rosenberg; but as to Harry Rosenberg, the judgment will be reversed and he be discharged.   All concur.

### ON MOTION FOR REHEARING.

SHERWOOD, P. J.—Defendant was convicted and adjudged guilty of a felony in the trial court and judgment rendered against, and sentence pronounced upon him, and he appealed to this court, where such judgment was in all things affirmed, as appears from the original opinion filed in this cause.   On taking his appeal he entered into recognizance conditioned for his appearance in this court to receive judgment on his appeal, and conditioned that he would render himself in execution.   With none of these conditions of his recognizance has he complied.   As such compliance did not occur when judgment of affirmance was pronounced, an order of arrest was made and delivered to our Marshal, who has vainly endeavored to execute it, defendant being in hiding.   With matters in this position, a motion for rehearing has been filed on behalf of defendant.

This motion, owing to the facts aforesaid, we shall decline to consider on the merits, as we are determined not to permit

a defendant to secrete himself; wait to see what the result of his motion will be, and if favorable to him, then make his appearance; if otherwise, remain perdue.   Motion denied.   All concur.