INGWERSEN, Respondent, v. ST. LOUIS & HANNIBAL RAILWAY CO., Appellant.

St. Louis Court of Appeals, January 16, 1906.

1. PRACTICE: Variance: Amendments. In an action by a shipper against a common carrier for damages to plaintiff's cattle, caused by delay in shipping, where the petition alleged that the delay was caused by the negligence of the defendant, and the proof showed that the delay occurred on the line of a connecting carrier, this was a material variance between the pleading and the proof and an amendment should have been allowed under section 657, R. S. 1899, had the objection been made by the defendant according to section 655.

Ingwersen v. Railroad.

2. ———: ———: ———: Waiver. But where the defendant in such case did not challenge the variance by objecting to the evidence, or in its motion for new trial, but tried the case on the theory that the loss occurred on the line of a connecting carrier, it waived its right to object to the variance in the appellate court.

3. ———: ———: ———: Motion in Arrest. The point made by a motion in arrest, that the petition failed to state a cause of action, was not a sufficient challenge of the variance to save the point for consideration on appeal.

4. COMMON CARRIERS: Bill of Lading: Notice of Loss or Damage: Waiver. Where a bill of lading for cattle provided that the shipper, as a condition precedent to any right to damage for loss or injury, should give notice verified by affidavit to the general freight agent of the carrier within ten days after the loss or damage was sustained, and the general freight agent, on receipt of an unverified notice after the ten days acted upon it as sufficient, investigated the loss and assigned other reasons for refusing to pay it, it was a waiver of notice in compliance with the contract.

5. ———: Connecting Carriers: Statutory Liability. Under section 5222, R. S. 1899, a carrier who receives freight for transportation over its own and connecting lines within or without this State, is liable for loss or damage to the shipper, caused by its own negligence or the negligence of any connecting carrier.

6. ———: ———: ———: Contract Restricting Liability. The initial carrier may contract against liability for loss occurring on the line of a connecting carrier on account of the latter's negligence, except where the contract of affreightment is to carry the property to destination. In the latter case, it cannot contract against liability on account of the negligence of a connecting carrier.

7. ———: ———: Contract for Through Carriage. Where a bill of lading issued by a railroad company provided, in one clause, for the carriage of a lot of cattle from Bowling Green, Missouri, to Chicago, Illinois, and a second clause of the bill of lading provided that if the destination was on the line of the company's road, the company would deliver the property to the consignee at that point, but if the destination was beyond the line of the company's road, it would deliver the property to the next connecting carrier and another paragraph of the bill of lading provided that the company should be liable only for loss occurring on its own line, the contract was one for through carriage.

Appeal from Pike Circuit Court.—*Hon. D. H. Eby,* Judge.

AFFIRMED.

*J. D. Hostetter* for appellant.

The plaintiff charged negligence against defendant and the proof negatived that charge. It is a well-settled principle of pleading that a party cannot base a claim to recover upon a specific act of negligence charged in his petition, and then be permitted to recover by making proof of another act of negligence not charged in the petition. And proof of other acts of negligence not pleaded will not be permitted. Breeden v. Mining Co., 103 Mo. App. 176; Waldhier v. Railroad, 71 Mo. 514; Schneider v. Railroad, 75 Mo. 296. First. The contract contained a recital that the rate therein mentioned was a special and reduced rate. There was no evidence to the contrary and in the absence of contradictory evidence the prima facie showing made by the recitals in the contract become conclusive. Bowring v. Railroad, 90 Mo. App. 324; Wyrick v. Railroad, 74 Mo. App. 406; McFadden v. Railroad, 92 Mo. 343; Hart v. Railroad, 112 U. S. 351. Second. The defendant's line was wholly within the State and it was not an interstate carrier and therefore not subject to the provisions of the interstate commerce law. Third. The validity of the ten days' notice clause does not depend upon a reduced rate of freight. Harned v. Railroad, 51 Mo. App. 488; Ward v. Railroad, 158 Mo. 229. The court erred in modifying defendant's instruction No. 3. The modification consisted of submitting the question of waiver of the ten days' notice. It will be observed that the plaintiff's reply was a general denial and in the defendant's answer it is especially alleged that the plaintiff was under obligation to give this ten days' notice and failed so to do. In order to have made

the question of waiver an issue in the case so as to have justified the modification of instruction No. 3 as made by the court, the plaintiff in his reply should have specifically pleaded the waiver. A waiver cannot be shown under a general denial. Pier v. Heinnehoffer, 52 Mo. 333; Whiteside v. Magruder, 75 Mo. App. 364; Olcorn v. Railroad, 108 Mo. 81; Nichols, Shepherd & Co. v. Larkin, 99 Mo. 271, 272; Bank v. Hatch, 78 Mo. 13; Kiskaddon v. Jones, 63 Mo. 192. The court erred in refusing defendant's instruction No. 11. This instruction declared the law to be that all the terms of plaintiff's contract were binding on him except those undertaking to exempt defendant from liability for damages occasioned by its negligence. There could be nothing objectionable to this instruction. The plaintiff was *sui juris* and ought to be held to his contracts. McLane v. Clapp, 141 U. S. 432; Harvey v. Railroad, 74 Mo. 538; Estes v. Reynolds, 75 Mo. 565; Live Stock Co. v. Railroad, 87 Mo. App. 337; Helm v. Railroad, 98 Mo. App. 419; Railroad v. McCleary, 77 Mo. 634; O'Brien v. Kinney, 74 Mo. 125; Harrison v. Railroad, 74 Mo. 364; Miller v. Railroad, 62 Mo. App. 252; Gann v. Railroad, 72 Mo. App. 54; Leonard v. Railroad, 54 Mo. App. 294; Kellerman v. Railroad, 136 Mo. 188; Duvenick v. Railroad, 57 Mo. App. 550.

*W. O. Gray* and *Dempsey & McGinnis* for respondent.

The appellant by its bill of lading contracted to transport respondent's cattle from Bowling Green, Missouri, to the Union Stock Yards, Chicago, and therefore the negligence of any of its connecting carriers became appellant's negligence under the provisions of section 5222, Revised Statutes 1899, and no allegation in the petition was necessary respecting any connecting carrier. McCann v. Eddy, 133 Mo. 59; Jones v. Railroad,

89 Mo. App. 653; Redman v. Railroad, 90 Mo. App. 68; Eckles v. Railroad, 72 Mo. App. 296; Davis v. Railroad, 126 Mo. 69; Railroad v. Interstate Commerce Commission, 162 U. S. 184. Appellant's contention as to notice is not well taken. Although notice was given, none was necessary to entitle the plaintiff to recover for damages sustained by reason of a decline in the market, and the amount of the verdict shows that the jury allowed only damages for a decline in the market. Plaintiff's actual damages, as shown by the evidence, was more than double the amount of the verdict. Leonard v. Railroad, 54 Mo. App. 293; Com. Co. v. Railroad, 80 Mo. App. 169; Live Stock Co. v. Railroad, 100 Mo. App. 674; Ward v. Railroad, 158 Mo. 226-237; Dezell v. Fidelity & Casualty Co., 176 Mo. 253. Respondent was bound to sell the cattle at the best price possible, and notice within ten days was absolutely useless and unavailing to the appellant, although the evidence shows that in fact plaintiff notified appellant's agent at Bowling Green within a few days after the sale of the cattle, and made out and delivered to him a written statement of his loss together with the bills of sale to be sent in to the appellant company. Besides, appellant waived notice after the expiration of the time and denied any liability, and evidence thereof was admitted on the trial without objection, and such evidence was introduced by the appellant. Keyes-Marshall Bros. Co. v. Railroad, 87 S. W. 553; Harned v. Railroad, 51 Mo. App. 482.

GOODE, J.—Action of damages for delay in transporting live stock. On January 19, 1904, the respondent delivered to the defendant, the St. Louis & Hannibal Railroad Company, at Bowling Green, Missouri, eighty head of cattle to be carried to Chicago, Illinois. The cattle should have reached Chicago in time for the market of the succeeding day; but a delay, which occurred within seven miles of the city, prevented them from reaching there until too late for the market and,

consequently, they had to be sold on the market of the 21st; when, on account of a lower price ruling and the decrease of weight caused by the delay, a considerable loss was entailed. It was to recover damages for this loss that the present action was instituted. The petition says there was unreasonable delay in the transportation of the stock, which caused them to be delivered to the consignee at destination after three o'clock in the afternoon of January 20th, instead of early in the morning as they should have been; wherefore, they had to be sold on the next day's market for twenty-five cents a hundred pounds less than they would have brought on the market of the 20th. The petition then proceeds as follows:

"Plaintiff further says that by reason of said delay in the transportation of said cattle and the long stay in the cars without food and water caused by said delay and negligence on the part of the defendant, its agents, employees and servants, there was a shrinkage of thirty-two hundred pounds in the weight of said cattle more than there would have been had they arrived at said destination within a reasonable time and that by reason of the appearance of said cattle caused by said delay and the long stay in said cars as aforesaid, he was compelled to accept as the best price possible, forty-five cents per hundred pounds less than he would have gotten had said cattle arrived within a reasonable time as aforesaid."

It will be seen that there is no precise allegation that the defendant's negligence caused the delay, though probably that is the natural inference to be drawn from the language of the petition. The substance of the pleading is that there was a delay in transit which resulted in loss to the plaintiff and that the defendant's agents and servants were negligent in the matter. Now, the defendant insists that, as the evidence proved that delay was due to the negligence of a connecting company, a verdict against the plaintiff should

have been directed. In dealing with this point, it is to be premised that as the gravaman of plaintiff's case was unreasonable delay in transporting his stock to destination and a consequent loss, we think an amendment to show the delay was the fault of a connecting carrier would have been permissible. Such an amendment would not have substituted a new cause of action for the one originally stated; which, of course, is not allowed. [R. S. 1899, sec. 657; Heman v. Glann, 129 Mo. 425.] The case would still have been one for negligent delay in carrying stock and resting on the statute, and requiring the same measure of damages. [Lottman v. Barnett, 62 Mo. 159; and see on this subject Rippee v. Railroad Co., 154 Mo. 358; Ross v. Mineral Land Co., 162 Mo. 371; Schwab Clothing Co. v. Railroad Co., 71 Mo. App. 241; Stewart v. Van Horne, 91 Mo. App. 647.] It would have differed from the original case in respect of the negligence being that of a connecting carrier instead of the one which received the stock for shipment. Now, it is true that all the evidence, including the plaintiff's own testimony, showed no delay occurred on the defendant's road and that the defendant transported the cattle to Hannibal, the end of its line, and there delivered them to the Chicago, Burlington & Quincy Railroad Company, in the scheduled time. The delay occurred at the outskirts of Chicago on the Terminal Railroad; and, if due to negligence at all, it was the negligence of the company operating the last-named road. But the defendant omitted to call this discrepancy between the petition and the evidence to the attention of the lower court, either by objecting to testimony irrelevant to the allegations of the petition or in the motions for new trial and in arrest of judgment. In truth, instead of objecting to testimony going to show where the delay occurred and affording room for the inference that it was due to the neglect of a connecting carrier, the defendant itself introduced most of that evidence. The

theories of defense were that the defendant was exonerated from liability by these alleged facts; first, the delay occurred on the line of a connecting carrier; second, it was not due to negligence even on the part of that carrier, but to unavoidable causes; third, the notice of plaintiff's loss and claim for damages was not given within ten days after the loss occurred. The defendant tried the cause along those lines and requested and obtained instructions submitting the defenses for which it contended. Probably if the omission to allege in the petition negligence on the part of the connecting carrier had been invoked against plaintiff's right to a verdict, in such a way as to draw the court's attention to the omission, an amendment would have been ordered. The motion for new trial does not mention the variance between the petition and the proof, and in the motion to arrest the judgment, the only point made was that the petition failed to state a cause of action. That point can be raised at any stage of a case, and if it was well taken, we would reverse the judgment; but, manifestly, the petition stated a perfect cause of action. The contention now is, not that there was a failure to state a cause of action, but that the one stated was unproved. In order to entitle the defendant to a reversal of the judgment on this point, it should have been raised somewhere in the proceedings in the court below. [Mellor v. Railroad Co., 105 Mo. 455, 471; Chouquette v. Railroad Co., 152 Mo. 257.] Inasmuch as the statute made the defendant responsible for any loss plaintiff sustained from negligent delay in carrying his stock, whether defendant or a subsequent carrier was at fault, we think the deviation of the evidence from the petition was in particulars and not in the substance of the case alleged—that it was a material variance requiring an amendment of the petition had the statutory objection been made. [R. S. 1899, sec. 655.] This question arises often and is always difficult; for there is no definite test by which to distinguish in practice between a

material variance and a failure of proof, though it is easy to give abstract definitions of the two terms. The writer said all he can on the subject in Litton v. Railroad Co., 111 Mo. App. 140, 85 S. W. 978; and Hensler v. Stix, 113 Mo. App. 162, 88 S. W. 109. The plaintiff's case is for negligent delay for which defendant is responsible; and in our opinion this case was both alleged and proved.

By failure to prove "the allegation of the cause of action or defense to which the proof is directed in its entire scope and meaning" is meant a lack of evidence to support the cause of action alleged; not merely a failure to prove some particular allegation. [R. S. 1899, sec. 798.] But even if the discrepancy amounted to a falure of proof, the court had power to set aside the verdict and allow an amendment. [R. S. 1899, sec. 799.] To hold otherwise is to ignore a plain statute. It is my opinion that in view of this statute, in order to obtain a reversal for failure of proof, the party complaining must, at some time and in some definite, and not covert way, direct the trial court's attention to the matter; instead of keeping silent before and after verdict and first raising the objection on appeal. But I am not sure that the decided cases support this opinion. However, we are confronted with a material variance; not a failure of proof. A variance must be challenged in the manner presented by the statute; but there was no open challenge of this one. The motion in arrest was rather adapted to cover than to expose the point; for the prayer that the judgment be arrested because the petition stated no cause of action, tended to divert attention from the omission to state a cause of action in conformity with the evidence and to rivet the court's thought on the inquiry of whether it stated any cause of action at all. The rule declared in Mellor v. Railway Company (pp. 466 and 471) that objections must be timely and specific and legal ambuscades in practice ought not to be encouraged, is wholesome; as it tends to

make the decision of causes turn on their merits instead of technicalities. Believing that the defendant sustained no harm from the failure to amend the petition to conform to the evidence, and that it was susceptible of amendment in the trial court's discretion, had any point been made about the matter, we decline to reverse the judgment on this assignment of error.

Besides a general denial, the answer avers that defendant carried the cattle from Bowling Green, where they were received, to its terminus at Hannibal, Missouri, on time and there delivered them to the Burlington Railway Company, which carried them without substantial delay to Chicago, where they arrived during the morning of January 20th; that said morning was dark and foggy and the terminal district and stock yards were wet, muddy and dark, and an unusual quantity of live stock was brought into the yards at Chicago that morning; that this dark and foggy weather made the handling of trains slow and difficult; which fact, and the unusually large number of trains of stock waiting for access to the stock yards, caused an unavoidable delay in moving into the yards the train on which plaintiff's cattle were carried; in consequence of which, they were not unloaded until about three o'clock in the afternoon.

In further defense, the answer pleads certain clauses of the bill of lading which are alleged to bar plaintiff's recovery. The reply denies generally the averments of the answer. We copy those portions of the bill of lading invoked as a defense.

"ST. LOUIS & HANNIBAL RAILWAY COMPANY'S LIVE STOCK CONTRACT.

Executed at Bowling Green, Mo., Station, Jan. 19, 1904.

"This agreement, entered into by and between the St. Louis & Hannibal Railroad Company, party of the first part and T. B. Ingwersen, party of the second part, this 19th day of Jan., 1904, Witnesseth that

"Whereas, the St. Louis & Hannibal Railroad Company, as a common carrier, transports live stock at less than its regular tariff rates when its liability is limited by contract as follows:

"It is mutually covenanted and agreed by and between the parties hereto.

"That said party of the first part will transport for the said party of the second part three carloads of cattle said to contain forty-eight head together with the party of parties in charge thereof, as hereinafter provided, from Bowling Green, Mo., station to Chicago, Ill., station, consigned to Ingwersen & Jansen at Union Stock Yards, Ill. Subject to minimum weights applying on cars of various lengths as per tariff and rules in effect on the date of shipment, at the through rate of tariff per car from Bowling Green to Chicago, Ill., the same being a special rate, less than the regular tariff rate applying on shipments not covered by the conditions and stipulations herein contained.

"And it is further understood and agreed, by and between the parties hereto that if the destination of the aforesaid stock be located on the line of the St. Louis & Hannibal Railway, then the St. Louis & Hannibal Company agrees to deliver the same at destination after payment of proper charges by said consignee, but if the ultimate destination of said stock be located beyond the line of the St. Louis & Hannibal Railroad, the St. Louis & Hannibal Railroad Company hereby agrees to deliver same to the next connecting carrier; and it is understood and hereby agreed that the St. Louis & Hannibal Railroad Company shall be held liable under this contract only for loss or damage occurring on its own line, and while the said stock is in its actual custody; and that the duty and liability of said company shall absolutely cease and terminate upon delivery of the aforesaid stock to its next connecting line; and when the stock is destined to any point beyond the line of its railroad said first party guarantees to protect the through

rate from point of origin to ultimate destination in consideration of the covenants and agreements herein set forth. In consideration of the aforesaid special rate, the party of the second part hereby covenants and agrees that the liability of the said party of the first part shall be only that of a private carrier for hire."

"And it is further agreed by and between the parties to this contract that in consideration of the covenants herein set forth, said second party expressly agrees that as a condition precedent to his right to any damage for any loss or injury to the stock shipped under this contract during transportation thereof, he will give notice in writing of his claim therefor, verified by affidavit, to the general freight agent of the said first party, within ten days after said loss or damage has been sustained."

The testimony for the plaintiff supported the averments that the cattle were delayed in transit an unreasonable time and that they did not arrive at destination until the afternoon of January 20th, too late for the market of that day, and in consequence brought a lower price than they would have brought.

It appears that the plaintiff complained of his loss to the defendant's station agent at Bowling Green, who told him to put his complaint in writing and submit it to the company, which plaintiff did on January 30th, and within ten days after the loss occurred; but the complaint, or notice of loss, was not verified by affidavit, nor did the general freight agent of the defendant company receive it within ten days. Plaintiff delivered it to the station agent at Bowling Green and the latter transmitted it to the general freight agent, who got it about the third or fourth of February; that is, some fifteen days after the loss. Without making any objection to the form of the notice, its lack of verification or that it was tardy, the general freight agent acted on it as sufficient, and proceeded to investigate the cause of the delay, which he found had occurred on

the Terminal Railroad at Chicago. Thereupon, the general freight agent wrote to plaintiff's attorney that, as the defendant company had no special contract with the plaintiff for delivery of the stock in any particular time at destination, and as the defendant had handled the stock on its line and delivered it to a connecting carrier promptly, it was not liable for any subsequent delay. It is obvious from these facts that the defense to plaintiff's action based on the circumstance that the notice of loss was not verified or delivered to the defendant's general freight agent in ten days after the loss occurred, is untenable. Any failure to comply strictly with the terms of the bill of lading in regard to giving notice of a claim for loss was waived by the defendant. [McCullough v. Ins. Co., 113 Mo. 606.] Therefore, we overrule the error assigned because of an instruction the court gave excluding that defense from the jury's consideration.

It is insisted that a verdict should have been directed for the defendant because the evidence showed that if the delay in carrying the stock was due to negligence at all, and not to unavoidable causes, a connecting carrier was to blame; and, as the bill of lading provided that the defendant should only be liable for loss or damage occurring on its own road, it was not answerable to the plaintiff in damages. This agreement in the bill of lading is said to have been supported by a good consideration, as a special and reduced freight rate is recited. We may grant, for argument's sake, that there is sufficient proof, prima facie, that a lower rate of freight than usual was charged for the shipment, to constitute a good consideration for releasing the defendant from its common law liability. But this action does not rest on defendant's common law liability as a carrier, but on negligence. In truth, the measure of a common carrier's liability for delay in the transportation of freight is not the same as its liability for failure to safely deliver the freight. The carrier is

bound to use diligence to perform the contract of carriage expeditiously; but, if there is no stipulation to transport the goods to destination in a stated time, is excused for delays of an unavoidable character even though they were not due to the act of God or the public enemy; which alone will excuse failure to safely carry and deliver the freight. [Hutchinson, Carriers (2 Ed.), sec. 328 to 331; 4 Elliot Railroads sec. 1484; Leonard v. Railroad Company, 54 Mo. App. 293.] Not only is this an action for negligence, but it is one founded on the statute of this State which provides that when a common carrier receives property to be transferred from one place to another within or without the State, or when a railroad or other transportation company issues receipts or bills of lading in this State, the common carrier, railroad or transportation company issuing such bill of lading shall be liable for any loss, damage or injury to the property caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered or over whose line it may pass. [R. S. 1899, sec. 5222.] The same statute gives the receiving carrier an action against a connecting carrier to recoup any damages the former may be compelled to pay a shipper on account of the latter's negligence. As the statute is construed by the courts, it does not absolutely preclude a carrier from limiting by contract its liability for damage to property while in transit, to such damage as occurs on its own lines or is due to its own negligence. The theoretical right is conceded to an initial carrier to contract that it shall not be liable for losses on the line of a connecting carrier and because of the latter's negligence. [McCann v. Eddy, 133 Mo. 59; Marshall & Michel Grain Co. v. Railroad, 72 Mo. App. 82.] But this right is qualified by the proviso that if the receiving carrier enters into a contract of affreightment by which it agrees to carry the property to destination, it cannot so far limit its liability that it

will not be answerable for the negligence of a connecting carrier. [Cases cited.] It follows that the essential question in dealing with this defense is whether or not by the bill of lading in the present case, the defendant made a through contract of carriage; that is to say, undertook to transport the stock from Bowling Green, the point of shipment, to Chicago, the destination. The meaning of written instruments is usually to be ascertained from all their provisions; if possible giving effect to every term and such an intepretation as will harmonize with the other terms of the instrument. In view of this precept of the law, we might hesitate to say the defendant contracted to carry plaintiff's stock to Chicago, and not simply to the end of its own line to be thence transported by a connecting railway company over the balance of the route, were the question open in this State. But affreightment contracts in no material respect differing from the one before us have been construed by its highest courts to be through contracts of carriage. [Western Sash & Door Co. v. Railroad Company, 177 Mo. 641; Popham v. Barnard, 77 Mo. App. 619, 628.] By the first clause of the present contract the defendant agreed to transport the cattle from Bowling Green to Chicago. The second clause provided that if the destination was on the line of defendant's road, defendant would deliver the property to the consignee at that point; but if the destination was beyond the line of defendant's road, it would deliver the property to the next connecting carrier. The second paragraph provided that the defendant should be held liable only for loss or damage occurring on its own line, and its duty and liability should cease and terminate on delivery of the stock to a connecting line. The construction put on an agreement in that form is that the undertaking to carry to destination, though coupled with the proviso that the receiving carrier's liability for damage shall be confined to losses occurring on its own line, makes the agreement one for through

carriage by the initial carrier. [McCann v. Eddy; Popham v. Barnard; Western Sash & Door Co. v. Railroad Company; Bank v. Railroad, 72 Mo. App. 82; Marshall v. Railroad Co., 74 Mo. App. 81.] In view of the authorities in this State, we hold the trial court rightly refused to instruct for a verdict in favor of the defendant on the theory that it was not liable for damage to the stock after is passed from defendant's custody into a connecting carrier's.

It is conceded that the damages assessed by the jury were reasonable and the judgment will be affirmed. *Bland, P. J.,* and *Nortoni, J.,* concur.