STATE NATIONAL BANK OF ST. JOSEPH, Appellant, v. CHICAGO GREAT WESTERN RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, November 1, 1897.

1. **Common Carriers:** LIMITING LIABILITY FOR THROUGH FREIGHT TO ITS OWN LINE: STATUTE. Notwithstanding section 944, Revised Statutes 1889, a carrier receiving freight destined beyond its own line may stipulate that it will not be liable for negligence of the connecting carrier if its contract of carriage is limited to the end of its own route. Following *Dimmitt v. R'y*, 130 Mo. 433.

2. ——: ——: ——: CONTRACT. The mere fact that the intention is to ship beyond the terminus of the carrier and the bill of lading so indicates. can not make the carrier liable for the negligence of a connecting line beyond its own route.

3. ——: ——: ——: ——. The mere fact that the contract contains provisions intended for the benefit of the connecting carrier will not render the receiving carrier liable beyond his own line.

4. ——: ——: ——: ——. Whether the above interpretation of the statute will not allow common carriers to nullify its provisions, *quaere*.

*Appeal from the Buchanan Circuit Court.*—HON. J. H. PARISH, Judge.

AFFIRMED.

STATEMENT BY ELLISON, J.

The judgment below was for defendant and plaintiff appeals. The following is the principal portion of

the agreed statement of facts, including portions of bill of lading. The italics are by plaintiff's counsel:

"* * * That on the 7th day of September, 1895, the Willman Mercantile Company, a corporation as alleged in the petition, then engaged in the business of buying and selling fruit at St. Joseph, Missouri, *being desirous of having transported by freight to said city of Boston one carload of apples, consisting of 160 barrels of apples, presented said apples to defendant at its freight house at the city of St. Joseph for shipment, and stated to defendant's agents in charge thereof that the ultimate destination of said apples was said city of Boston, and requested that said apples be transported in a refrigerator car; that thereupon defendant received said apples for shipment* and made, issued, and delivered to said Willman Mercantile Company its contract of carriage, or bill of lading mentioned and described in the petition in this cause, a sworn copy of which is thereto attached, and which was and is in words and figures as follows, to wit:

" 'CHICAGO GREAT WESTERN RAILWAY CO. BILL OF LADING.

" 'ST. JOSEPH, Mo., Sept. 7th, 1895.

" 'Conditions: Received from Willman Mer. Co. in apparent good order, by the Chicago Great Western Railway Company, the following described property (contents and value unknown), consigned as marked and numbered in the margin, upon the terms and conditions hereinafter contained, and which are hereby made a part of this agreement; also subject to the conditions and regulations of the published tariffs and classifications in use by the Chicago Great Western Railway Company, to be transported over the line of this railway to Chicago, Ill., station, and there delivered in like good order to consignee or owner, at said

station, or to such company or carrier (if the same are to be forwarded beyond said station) *whose line may be considered a part of the route to place of destination of said property*, it being distinctly understood and agreed that the responsibility of this company, *as a common carrier*, shall cease at the station where delivered, or tendered to such person or carrier.

" 'It is further especially agreed that for all *loss and damage occurring in the transit of said property*, the legal remedy shall be against the particular carrier or forwarder only in whose custody the said property may actually be at the time of the happening thereof, it being understood that the Chicago Great Western Railway Company assumes no other responsibility for the safe carriage of said property or its safety than may be incurred on its own road.   *   *   *   *And in the event of loss of or damage to any of the property for which the carriers may be responsible under this bill of lading, it is provided that the Chicago Great Western Railway Company and other interested carriers may have the benefit of any insurance effected by or on account of the owner of said property.*   But the Chicago Great Western Railway Company *guarantees that the rate of freight for the transportation of said property shall not exceed rates as specified below and charges advanced,* provided contents of packages are correctly stated in receipts (original and duplicate) on which this bill of lading is issued.

" '*The owner or consignee to pay freight or charges as per specified rates upon the goods as they arrive.   *   *   *   It is expressly understood and agreed that the Chicago Great Western Railway Company reserve the right to forward the within mentioned goods by any railroad line between point of shipment and destination.   All carload freight shall be subject to a minimum charge for trackage and rental of $1.00 per car for each twenty-four*

*hours detention or fractional part thereof, after the expiration of forty-eight hours from its arrival at destination.*

| CONSIGNEES. | NO. PKGS. | DESCRIPTION OF PROPERTY, ETC. | WEIGHT. |
|---|---|---|---|
| Ginter Produce Co. Boston, Mass.<br><br>3,000 lbs. ice $6 | 160 | Barrels Apples<br>O. R. D. & P.<br>chgs gtd<br>Car 158 S. R. D. | 24,000 |

Deliver this shipment only on presentation of original bill of lading.

" '*Subject to classification, rules and regulations of connecting roads.* C. R. BERRY, A. G. F. A.

"L.' "

(Across face of this bill of lading were the words "Original," and "Read the conditions.")

"That said Willman Mercantile Company duly accepted said bill of lading. *That defendants and said Willman Mercantile Company agreed upon the freight to be paid for the transportation of said apples; that said apples were placed in a refrigerator car.* That defendant carried said apples seasonably, and without delay, over its said line of railway to said city of Chicago, its said eastern terminus, and there delivered the same and the car containing same in like good order as received to the Merchants' Dispatch Transportation Company for further transportation to their destination at said city of Boston, and at the same time duly notified said Merchants' Dispatch Transportation Company of the existence of said bill of lading and the terms and conditions thereof; that thereupon the said Merchants' Dispatch Transportation Company received said apples from defendant, subject to said bill of lading and its said terms and conditions, for further transportation to said city of Boston and made its way-bill for the direction *of said car containing said apples*

in transit and the delivery of said apples at destination, which said waybill contained, among other things, the following recital: 'Deliver this freight only on surrender of original bill of lading properly indorsed by consignee.'

"That said Merchants' Dispatch Transportation Company duly transported said apples over its said line of railway in usual time to said city of Boston and there delivered the same to the Ginter Produce Company; that the delivery of said apples by the said Merchants' Dispatch Transportation Company to the said Ginter Produce Company was made without a requirement of the presentation of the said bill of lading, or the surrender thereof by the said Ginter Produce Company or other person or corporation; and without the presentation of said bill of lading.    * . *    *''

*Kendall B. Randolph* for appellant.

(1) The bill of lading, it is true, seeks to provide against the negligence of connecting carriers, but the contract is to send to Ginter Produce Company, Boston, Massachusetts, in a certain refrigerator car, one carload of apples in consideration of the freight agreed upon between them. If this is true, then defendant is liable. R. S. 1889, sec. 944; *McCann v. Eddy*, 133 Mo. 59. It is very evident that this bill of lading was not framed to meet the requirements of the opinion in that case. (2) There is in this bill of lading no express limitation not to ship to destination. Unless there is such express limitation defendant is liable. *McCann v. Eddy, supra;* R. S. 1889, sec. 944. The bill of lading in this case is very much the same in form as that in the case of *Dimmitt v. R'y*, 103 Mo. 438.

*James C. Davis* for respondent.

(1) The bill of lading constituted the contract of carriage. *R'y v. Cleary*, 77 Mo. 634; *O'Bryan v. Kinney*, 74 Mo. 125. (2) Neither the appearance in the bill of lading of the consignee's name and its address at Boston, Massachusetts, nor the agreement respecting the transportation charges constituted a contract to convey the apples to Boston in view of the express agreement by respondent recited therein to convey them to Chicago, Illinois, and there deliver them to the owner or a connecting carrier. *Snider v. Express Co.*, 63 Mo. 376; *Wheeler v. R'y*, 3 Mo. App. 359; *Moore v. Henry*, 18 Mo. App. 35; *Bennitt v. R'y*, 46 Mo. App. 656. (3) The clause in the bill of lading exempting respondent from any liability for the loss of the apples occurring on a connecting line, and providing that in the event such loss should occur on a connecting line the remedy therefor should be against the particular carrier or forwarder in whose custody the apples might be at the time of the happening thereof, was a valid provision binding upon appellant. *Glass Co. v. R'y*, 44 Mo. App. 416; *Publishing Co. v. Express Co.*, 44 Mo. App. 421; *Hill v. R'y*, 46 Mo. App. 517; *Hance v. R'y*, 56 Mo. App. 476; *Minter v. R'y*, 56 Mo. App. 282; *Dimmitt v. R'y*, 103 Mo. 433; *Nines v. R'y*, 107 Mo. 475; *McCann v. Eddy*, 133 Mo. 59; *R'y v. Odam*, 38 S. W. Rep. 339.

ELLISON, J.—The defendant received of the Willman Mercantile Company a carload of apples and issued to such company its bill of lading wherein there occurs many provisions and stipulations; those pertaining to the points for decision in this case are set out in the statement of the cause, together with much of the agreed statement of facts on which the case was

tried. Those portions in italics are claimed by plaintiff as especially showing a contract 'for through carriage by defendant to point of destination.

The bill of lading with draft on consignees attached for amount of proceeds of shipment was assigned to plaintiff. The defendant's road terminated at Chicago and the connecting carrier at that city carried the apples to Boston and there negligently delivered them to consignees without the bill of lading. The result was that the' draft held by plaintiff has not been paid. The judgment below was for defendant.

We understand the cases of *Dimmitt v. R'y*, 103 Mo. 433, and *McCann v. Eddy*, 133 Mo. 59, to decide that under the statute of 1889, section 944, a carrier receiving freight destined beyond its own line may stipulate that it will not be liable for negligence of the connecting carrier if its contract of carriage is limited to the end of its own route. But if the receiving carrier's contract is to transport the freight to point of destination it can not so limit its liability, and must answer for the negligence of the connecting carrier. Those cases further hold that the receiving carrier in receiving freight and issuing a bill of lading therefor to a point beyond its own line *prima facie* agrees to carry to such point, and to prevent such construction of the contract, it will be necessary that it stipulate it is only to carry to the end of its own line.

COMMON carriers: limiting liability for through freight to its own line: statute.

In this case the bill of lading shows Boston to have been the destination of the freight, but the contract itself is that defendant received the freight "consigned as marked" to Boston "to be transported over the line of this railway to Chicago, Ill., station, and there delivered in like good order   *   *   *   to such

company or carrier whose line may be considered a part of the route to place of destination of said property, it being distinctly understood and agreed that the responsibility of this company, as a common carrier, shall cease at the station where delivered or tendered to such * * * carrier." There then follows a stipulation that for all loss or damage occurring in transit the legal remedy shall be against the carrier causing the loss; "it being understood that the Chicago Great Western Railway Company assumes no other responsibility for the safe carriage of said property or its safety than may be incurred on its own road."

The defendant's contract was undoubtedly only to carry to the end of its own line. The fact that Boston was marked on the bill of lading as the point of destination can not overcome the express stipulation that defendant would only carry to Chicago, the end of its own line. And under the rule of the foregoing cases we must hold the defendant not liable for the negligence at Boston of the connecting carrier.

2. We do not regard the parts of the bill of lading italicised by plaintiff as evidencing a contract to carry to point of destination.

The fact that the shipper was "desirous" of shipping the apples to Boston and so stated to defendant's agent is of no moment, since the desire to ship and the information as to destination being Boston are not inconsistent with a contract to ship to Chicago only. So the same may be said of the fact that the bill of lading specifies that defendant is to deliver to such connecting carrier as may be considered a part of the route to destination. And the further fact that the defendant reserved the right to forward by any raiload line between points of shipment and destination was only a reservation of a

right to deliver to any connecting carrier leading to or connecting with point of destination.

3.   It will be seen that other parts of the bill of lading contain stipulations which were intended for the benefit of the connecting carrier.   As for instance, the right to charge trackage to shipper for detention of car at destination over twenty-four hours.   And that the connecting carrier should have the benefit, in case of loss for which it would be liable to shipper, of all insurance taken out by the shipper.   These provisions when considered in connection with the whole contract, only recognize the fact that the shipment will be continued over lines other than defendant's.   They are doubtless inserted in the contract to facilitate the procuring of connecting carriers.   But they can not be allowed to control the express stipulation that the shipment was from St. Joseph "to Chicago, Ill., there to be delivered" to the connecting carrier.   Indeed the face of the provisions themselves indicate that there was a separate liability by each carrier for losses happening on their own lines.   Nor do we see that the act of defendant in guaranteeing the rate of freight advanced by the shipper should not *exceed* the amount advanced, has the effect to nullify the contract of shipment to Chicago.

It must be admitted that the cases referred to above recognize that contracts may be made by a carrier for the shipment of freight to the end of its line which is destined in bill of lading to points beyond its line; and that such contracts may contemplate delivery to a connecting carrier.   Accepting those decisions and giving to them their full effect we can not see anything in the contract before us which would fall under the inhibition of the statute aforesaid.   Though we may add

that but for the authoritative interpretation which the statute has received we might have concluded that the legislature intended by the enactment that a receiving carrier of freight for a destination beyond its own line, agreeing on a through rate and delivery to a connecting carrier, made such connecting carrier its agent to the extent that, under the statute, it could not exempt itself from liability for the connecting carrier's negligence. The words of the statute certainly convey such meaning. The statute reads that the common carrier issuing the bill of lading shall be liable for any loss "caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained. R. S. 1879, sec. 598b.

It is a matter of common knowledge that railway carriers solicit the transportation of freight to distant points beyond their own lines; that loss happens to such freight while in transit, but on which line the shipper is, in most instances, necessarily ignorant. Unless he can hold the receiving carrier liable for the loss, he is practically without remedy. There is strong reason to believe that the legislature, by the act aforesaid, intended to relieve this condition. And it may be questioned whether, under the interpretation placed on the statute, it will not allow public carriers to nullify its provisions.

The judgment will be affirmed. All concur.