# WESTERN SASH & DOOR COMPANY v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

## Division Two, November 17, 1903.

1. **Interstate Commerce: LOSS OR INJURY TO FREIGHT: MISSOURI STATUTE: CONSTITUTIONALITY.** The clause of the United States Constitution which gives Congress power to regulate commerce among the States, does not render invalid the Missouri statute making a railroad company receiving freight in this State for shipment to a point without this State which is not on its own line, liable for injury to such freight, whether that injury was caused by the receiving company or the connecting line. The statute does not operate as a regulation of trade among the States, but simply prohibits a carrier, which, by contract, undertakes to transport property to a point beyond its own route, from relieving itself of responsibility for neglect to properly perform its duty.

2. ———: ———: **LIMITING LIABILITY.** Under that statute, if the railroad company receives freight to be transported to a place without this State not reached by its own line, it can not limit its liability to loss or injury occurring only on its own line. If it wishes to escape loss or injury occurring beyond its own line, it must not receive freight under an agreement to transport it beyond its own line. And if it so receives it, any stipulation in the affreightment contract that it is not liable for loss or injury beyond its own line, will not relieve it of liability for loss or injury occurring beyond its own line.

3. ———: ———: ———: **CONTRACT.** The receiving railroad is left free by that statute to contract to convey the freight over its own line and limit its liability to losses occurring on its line. But if it receives the goods under an agreement to transport them beyond its line, the statute makes it liable for losses or injury occurring anywhere before the destination is reached, however it may attempt by the contract to limit its liability.

. Transferred from Kansas City Court of Appeals.

AFFIRMED.

*W. F. Evans* and *W. E. Clark* for appellant.

(1) The law presumes, in the absence of evidence to the contrary, that where freight is shipped over more than one road and at the time it reaches its destination is in a damaged condition, the damages occurred on the road of the last carrier. Flynn v. Railroad, 43 Mo. App. 439; Crouch v. Railroad, 42 Mo. App. 248; Lin v. Railroad, 10 Mo. App. 131; Hutchison on Carriers (1 Ed.), sec. 761, p. 589; 6 Am. and Eng. Ency. Law (2 Ed.), 652. (2) Under the contract in this case the liability of appellant ceased at its own line. By said contract appellant undertook to forward or transport the property only to the end of its own line, and it should not be liable for damages occurring beyond that point. Nines v. Railroad, 107 Mo. 478; Dimmitt v. Railroad, 103 Mo. 433; Miller G. & E. Co. v. Railroad, 138 Mo. 670; Bank v. Railroad, 72 Mo. 56; Patterson v. Railroad, 56 Mo. App. 657; Minter Bros. v. Railroad, 56 Mo. App. 290. (3) Section 944, Revised Statutes 1889, if applicable to an interstate shipment, is unconstitutional and void, as it is an attempt on the part of the State to regulate commerce between the states. U. S. Constitution, sec. 8, art. 1; U. S. R. S. secs. 52, 58; Railroad v. Illinois, 118 U. S. 557; Railroad v. Patterson, 169 U. S. 311; State v. Bunce, 65 Mo. 349; Vawter v. Railroad, 84 Mo. 679; Stanley v. Railroad, 100 Mo. 435.

*Lathrop, Morrow, Fox & Moore* for respondent.

(1) Defendant undertook to carry the goods to Blackwell, Oklahoma Territory. There was no contract that it should only carry over its own line. This action is bottomed on section 944, Revised Statutes 1889. The meaning of this section has been declared by the Supreme Court of this State and also by the Supreme Court of the United States, as well as by rulings of the Kansas City Court of Appeals; so that its mean-

ing is no longer a question of doubt. The pur-
pose of the statute was to regulate the form of
contract of shipment. Railroad v. McCann, 174
U. S. 580. In the case at bar the receipt given by
the defendant does not upon its face contain any con-
tract for shipment solely over the line of the defend-
ant. It is true it refers to "the rules and conditions
printed on the regular shipping bills now in use by the
company signing this receipt;" but this is wholly in-
sufficient, since the contract to transport only over the
line of defendant in order to be availing should have
been contained "in the portion of the agreement re-
citing the contract to transport." It is sought here to
do the thing prohibited in the case above cited. The
appellant insists that the shipper should consult the
defendant's printed rules and conditions on its regular
shipping bills and by critical comparison of such condi-
tions, with the contract of transportation, determine
what is the true construction of the two papers taken
together; but the statute relieves the shipper of "a criti-
cal comparison of clauses of the contract in order to
reach a proper understanding of its meaning." It is
said in Popham v. Barnard, 77 Mo. App. 628, that:
"Receiving freight for shipment beyond his own line
is prima facie an agreement to carry to that point, and
it is necessary in order to escape liability that he should
stipulate that he is only to carry on his own line." (2)
The parties understood that the contract was one for
through carriage. They so construed it by their con-
duct. The defendant regarded it as a through contract
in giving it a through billing by virtue of the traffic ar-
rangements between it and the Hutchinson & Southern,
as well as by informing Mr. Vedder that the Rock Is-
land "carried goods to Blackwell." Plaintiff under-
stood that defendant was to assume the obligation for
through transportation because its shipping clerk called
up the defendant and asked if it carried goods to Black-
well, received an affirmative answer, and the goods were

accordingly shipped on the strength of the statement. It is held that where a contract of this nature is ambiguous the acts of the parties may be ascertained to supply the ambiguity. It is also true that the construction which the parties themselves place upon a contract will govern where there is any ambiguity. Williams v. Railroad, 54 S. W. 689.

FOX, J.—This action was commenced before a justice of the peace in Jackson county, September 28, 1898, by filing the following statement:

"Kansas City, Mo., July 29, 1898.
"Chicago, Rock Island & P. Ry. Co.,
To Western Sash & Door Co.,            Dr.
"To damages for negligently breaking a window
40x70 op'g., No. 67, shipped from Kansas
City, Mo., to Blackwell, O. T., July 20, 1898, $6.75
"To freight paid on same to Blackwell,........    .41
                                                 ——————
                                                 $7.16"

The case was tried in justice's court, October 14, 1898, taken under advisement, and judgment rendered in favor of plaintiff on October 17, 1898, and appealed to the circuit court on October 25, 1898.

On February 24, 1899, and during the January, 1899, term of the circuit court, the cause came on for trial, and, a jury being waived, was submitted to the court on following evidence and following

AGREED STATEMENT OF FACTS.

"For the purpose of this trial of the above entitled cause the following facts may be taken as admitted by both parties hereto, reserving to each party the right to introduce at the trial such further testimony as it may desire.

"That the plaintiff and the defendant are corporations lawfully doing business in Kansas City, Missouri, defendant being a common carrier operating a line of railroad from said city to the town of Medford, Oklahoma Territory. That on July 20, 1898, plaintiff was the owner of one glass window which it delivered, carefully and securely packed in a crate, to defendant, and received the bill of lading or receipt hereto attached and marked 'Exhibit A,' which receipt refers in terms to the 'regular shipping bill,' a copy of which is also hereto attached and marked 'Exhibit B.' That Blackwell, the destination of the window indicated by the bill of lading, is not on defendant's line of road, but that its line extends only to Medford, Oklahoma, and that defendant is in nowise interested in the line of road from Medford to Blackwell. That defendant carried the said window to Medford, Oklahoma, and there delivered it, without examination, to the Hutchinson & Southern Railroad Company, the owner of the said line of road from Medford to Blackwell. That when plaintiff delivered the window to defendant, plaintiff did not know that Blackwell was not on defendant's line of road, nor were any questions asked, nor was anything said in regard thereto. That the window reached Blackwell in such a badly damaged condition that it was worthless. That the damage to said window amounted to $7.16."

Said "Exhibit A" attached to said statement of facts is in words and figures following, to-wit:

"R. I. Railroad, Kansas City, 7-20-1898. Received from Western Sash & Door Co. in apparent good order, property marked and described below (contents and value otherwise unknown) to be forwarded subject to the rules and conditions printed on the regular shipping bills now used by the company signing this receipt, said rules and conditions being accepted and agreed to by the shipper, addressed to Florence Lbr. Co., Blackwell, O. T.

"No. and Description of Articles.
"1 Wd. 67 opg 40x70.                                    Weight.
        "[Internal revenue stamp, 1 cent.]"

Also endorsed, or stamped thereon with a rubber stamp the following:

"C. R. I. & P. Ry., Kansas City, Mo., 14th and Wyoming Sts. Received in apparent good order. *This company will not be responsible beyond stations on this road.* F. W. Segur, Agent, Jul. 21, 1898, per E."

The contents of the regular shipping bill of appellant referred to in "Exhibit A," is substantially as stated by counsel for appellant, as follows:

"A blank line for the name of station and date, followed by the words 'received from,' followed by a blank line for the insertion of the shipper's name, followed by the words 'in apparent good order, by the Chicago, Rock Island & Pacific Railway Company, the following described packages, marked and numbered as per margin, subject to the conditions and regulations of the published tariff of said company, to be transported over the line of this railroad to,' followed by a line for the insertion of the name of the station at the end of defendant's line, followed by the words, 'and delivered after payment of freight charges in like good order, to the next carrier (if the same are to be forwarded beyond the lines of this company's road), to be carried to the place of destination, it being expressly agreed that the responsibility of this company shall cease at this company's depot at which the same are to be delivered to such carrier, but this company guarantees that the rate of freight for the transportation of said packages from the place of shipment to,' followed by a blank line in which to insert the name of the place of the final destination of the property, followed by the words, 'shall not exceed,' followed by a blank line in

which to insert the through rate. It further provides that 'this company shall not be responsible for the . . . breakage of glass,' and it is 'further especially agreed that for all loss or damage occurring in transit of said packages the legal remedy shall be against the particular carrier or forwarder only in whose custody the packages may actually be at the time of the happening thereof, it being understood that the Chicago, Rock Island & Pacific Railway Company assumes no other responsibility for their safe carriage or safety than may be incurred on its own road.' Then follows nearly a half page blank for marks and description of the property.''

Respondent concedes that the statement by appellant is substantially correct, as far as it goes, and suggests the following:

''The defendant's agent at Kansas City had authority to make a contract for through shipment to Blackwell. The plaintiff's agent, before making the shipment, called up the defendant's station agent on the 'phone and asked him whether the Rock Island carried goods to Blackwell, Oklahoma, and was told that they did; and the shipment was made by him, relying upon that statement. The evidence discloses that there was a joint traffic arrangement between the defendant and the Hutchinson & Southern, whereby freight money was divided between the two. The shipment in controversy was billed through by defendant from Kansas City to Blackwell.''

Upon an examination of the testimony as disclosed by the record, we find the suggestion, as made, is substantially what the testimony indicates were the facts in this case.

At the close of all the evidence, the appellant prayed the court to declare the law as follows:

''1. The court declares the law to be that under the pleadings and evidence in this cause the finding and judgment must be for the defendant.

"2. Under the receipt or bill of lading offered and read in evidence in this case, the court declares the law to be that the defendant did not contract to carry the goods in controversy to the place of destination, and if the court finds from the evidence that said property was damaged while in transit and that such damage accrued while said property was in the possession of another independent railroad or transportation company, and after defendant had made due delivery of said property to such other railroad or transportation company, then the finding and judgment must be for defendant.

"3. If the court finds from the evidence that the property in controversy was delivered to defendant in good condition and that the place of destination of said property was not on defendant's line of railroad, and that another independent railroad or transportation company carried said property from Medford to Blackwell, and that it was necessary that said property be carried over said other railroad or transportation line, other than defendant's line, and that said property, when delivered at the place of destination by such other line of railroad or transportation company, was found to be damaged, then, in the absence of any evidence to the contrary, the law presumes that such damage to said property accrued while it was in the possession of such other railroad or transportation line, and that it did not. accrue while said property was in the possession of defendant.

"4. Inasmuch as the evidence shows without dispute that the property in controversy, in order to reach its destination, had to be carried from this State, where it was delivered to defendant, to its place of destination in another State or Territory, to-wit, in the Territory of Oklahoma, the shipment of said property was what is known as an interstate shipment, which shipments are by the Constitution of the United States placed in the control of Congress, and the laws of this State, so

far as they may attempt to make the receipt of said property, and issuing a receipt or bill of lading therefor by defendant, bind it to respond in damage for any loss or injury to said property whilst in the possession of any connecting carrier whose line forms a part of the route over which such property had to be carried, would not apply, but the defendant would not be liable to plaintiff for any damage that might occur to said property while in the possession of such other carrier, unless defendant had contracted to be liable for such loss.

"5.    Section 944 of the Revised Statutes of 1889, is void as being contrary to the provisions of the Constitution and laws of the United States, in so far as the said section makes, or attempts to make, a common carrier (such as defendant) receiving property in ·this State destined to points without this State and beyond the lines of such carrier, liable for all loss or damage accruing to such property whilst in the possession of an independent connecting common carrier, for the purpose of completing the carriage of such property, the line of such connecting carrier being wholly without this State, and such loss or damage being caused by the neglect of such connecting carrier."

After the submission of this cause to the court, on the 6th day of March, 1899, it rendered judgment for the plaintiff.   In due time and form, defendant prosecuted its appeal to the Kansas City Court of Appeals, and from that court it was certified to this court, for the reason urged that a constitutional question is involved, in the final disposition of the case, hence the cause is now here for review.

The contract for shipment in this cause must speak for itself.   About the only controverted question involved in this suit is the proper interpretation of section 944, Revised Statutes 1889.

It is earnestly insisted that the provisions of this

section are inapplicable to such shipment of property as the one in dispute in this action.

It is also contended that this section is contrary to and repugnant to the commerce clause of section 8, of article 1 of the Constitution of the United States, and is therefore void. As this constitutional question resulted in this court's assuming jurisdiction of this case, it is appropriate that it should first be settled.

If this was the first time that this question had been presented to this court for determination, we would approach the decision of it with some doubt; but it is no longer to be regarded as a new question. The able and forcible discussion of this section when directly in judgment before the Supreme Court of the United States, as well as the Supreme Court of this State, leaves no doubt as to the well-settled views of these tribunals on this question, and must be considered as decisive of it.

In McCann v. Eddy, 133 Mo. 59, this court, after a careful consideration of this statute, in a well-considered opinion, fully interpreted its force and application to shipments similar to the one before us, and upon this particular branch of the case, in respect to its constitutionality, said:

"We are unable to see, as contended by defendant, that the construction we give this statute makes it repugnant to that provision of the Constitution of the United States which gives to Congress alone the power to regulate commerce among the States. The act in no way operates as a regulation of trade and business among the States. No burden or restriction on transportation is imposed. Carriers are left free to make their own contracts in regard to compensation for their services for transportation between the States, subject to congressional regulations. The statute merely prohibits a carrier, who, by contract, undertakes to transport property to a point beyond its own route, from relieving itself of responsibility for neglect to properly

perform its duty. It only imposes the duty and liability which the law, from considerations of public policy, imposes upon all common carriers in the transportation of property over their own lines, though they may extend into other States.''

To the same effect is the case of Dimmitt v. Railroad, 103 Mo. 1. c. 443; Nines v. Railroad, 107 Mo. 475.

All doubt is removed as to the correctness of the conclusions reached on this subject by the Missouri court in the unqualified approval of the interpretation of this statute by this court, in the case of Railroad v. McCann, 174 U. S. 580. The opinion of this court in the 133 Mo., supra, was directly in judgment before the Supreme Court of the United States, in the case cited. The same reasons were urged against the force and validity of this statute. The court, after a careful discussion of the propositions involved, maintained, in every particular, the views expressed by the Missouri Supreme Court. Mr. Justice WHITE, in reviewing that case, said:

''It is urged, however, that even although it be conceded that the Supreme Court of Missouri has interpreted the statute in question, in an abstract sense, as not depriving a railway company of the power to limit its liability to its own line when receiving goods for interstate shipment, the court has nevertheless given the statute practical enforcement as if it meant exactly the contrary of the interpretation affixed to it. In other words, the proposition is, although the Supreme Court of Missouri has declared that the statute did not deprive a carrier of its right to limit its liability to its own line, yet it has, as a necessary consequence of its application of the statute to the bill of lading in controversy in this cause, given to the statute the very meaning which it expressly declared it had not. An examination, however, of the opinion of the Supreme Court of Missouri demonstrates that it is not justly susceptible of the construction thus placed upon it. Analyz-

ing the opinion of the court, it results that the court decided that whilst the statute left a railway company ample power to restrict its liability by contract, both as to carriage and as to liability for negligence, to its own line, the purpose embodied in the statute was to regulate the form in which the contract should be expressed, so as to require the carrier to embody the limitation directly and in unambiguous terms in the portion of the agreement reciting the contract to transport, and not to import or imply such limitation by way of exception or statements of conditions and qualifications, requiring on the part of the shipper a critical comparison of clauses of the contract, in order to reach a proper understanding of its meaning. That is to say, that the restraint imposed by the statute was not a curtailment of the power to limit liability to the line of the carrier accepting the freight, but a regulation of the form in which the contract having that object in view should be drawn. Considering the statute as thus interpreted by the Supreme Court of the State of Missouri, it can not be held to be repugnant to the Constitution of the United States."

This brings us to the second and only remaining proposition involved in this dispute. Upon the facts disclosed by the record, was plaintiff entitled to recover? The correctness of this judgment must find its support by the application of the facts to the terms of the statute.

We have reached the conclusion, after careful examination of the facts upon which this case was tried in the circuit court, that it is clear that the shipment of the glass window was to Blackwell, Oklahoma Territory, and that it was received for that purpose and that appellant's undertaking was a shipment from Kansas City to the point of destination, as indicated by the receipt, marked "Exhibit A." Before this shipment was made, the agent of appellant was called by telephone and the inquiry was made "whether they carried goods

to Blackwell, Oklahoma Territory?'' The answer to
this inquiry was that they did. The goods were
shipped. Appellant received them, and executed the re-
ceipt which indicated the point of destination. There
was a joint traffic arrangement between appellant and
the Hutchinson & Southern road. The local agent testi-
fied that he was authorized, by the general tariff with
the Hutchinson & Southern Road, to receive freight for
shipment to Blackwell and similar points; ''that he
thought the waybill, which accompanied the goods in
controversy, was a through waybill to Blackwell.''

We repeat that this state of facts indicates very
clearly that the parties understood that the contract
was one for through carriage, and the construction
given this contract and the understanding of the parties
at the time, as to its force and effect, should and will
govern this case. The statute upon which this recovery
is predicated (sec. 944, R. S. 1889) provides:

''Whenever any property is received by a common
carrier to be transferred from one place to another,
within or without this State, or when a railroad or other
transportation company issues receipts or bills of lad-
ing in this State, the common carrier, railroad or trans-
portation company issuing *such* bill of lading shall
be liable for any loss, damage or injury to such prop-
erty, caused by its negligence or the negligence of any
other common carrier, railroad or transportation com-
pany to which such property may be delivered, or over
whose line such property may pass; and the common
carrier, railroad or transportation company issuing
any such receipt or bill of lading shall be entitled to
recover, in a proper action, the amount of any loss,
damage or injury it may be required to pay to the
owner of such property, from the common carrier, rail-
road or transportation company, through whose negli-
gence the loss, damage or injury may be sustained.''

This statute is susceptible of but one construction;
it simply means what it says. It was doubtless en-

acted for the benefit of the shipper to meet the conditions of traffic disclosed in this case. If the goods are received for through carriage, the shipper looks alone to the railroad company issuing the receipt, and the receiving company must seek his remedy for loss against the connecting carrier.

It is very earnestly insisted that this contract is limited by the reference in the receipt, that the goods were to be forwarded, subject to the rules and conditions printed on the regular shipping bills, and as further indicated by the stamp on the receipt executed: "This company will not be responsible beyond stations on this road."

We will say, in respect to this contention, that it is not a proposition of first impression in this court. The purpose of this statute was to meet the exceptions embodied in a contract, as is urged in this contention, and indicated a form that is reasonable and not calculated to mislead either party, as to burdens imposed.

The purpose of this statute is very clearly announced, as will be observed from the quotation herein, in the case of Railroad v. McCann, supra.

Prior to the enactment of this section, the reasons urged by appellant would be full of force and might very properly be considered a restriction of the liability of the railroad company, but in view of the plain and unambiguous term of the statute, this result is rendered impossible. This conclusion is made clear by the case cited, of Railroad v. McCann, supra, where the court says:

"To assert that because there is a liability arising from the application of the statute to the bill of lading which would not result from the bill of lading itself, therefore the statute must necessarily have been held to impose on the carrier a liability for an interstate shipment beyond its own line, is without merit. True, if there had been no statute regulating the form of the bill of lading, and we were called upon to construe the

instrument, we might consider that the limitations referred to in the contract restricted the liability of the carrier to his own line. This result, however, is rendered impossible in view of the statute, not because from its provisions a liability is imposed, but because of the failure of the contract to conform to the requisites of the statute."

The Kansas City Court of Appeals in Popham v. Barnard, 77 Mo. App. l. c. 628, 629, gives emphatic expression to its views, upon the subject in dispute before us. ELLISON and GILL, JJ., speaking for the court, following the opinion of SMITH, J., say:

"Fearing that expressions in the foregoing opinion by Judge SMITH would convey the impression that, when freight is received by the carrier for shipment to a destination beyond his own line, it was necessary that he should contract to carry to the point of destination before he would be liable for negligence of a connecting carrier, we deem it prudent to state that when the carrier receives freight for shipment to a point beyond his own line he will be so liable, though he does not contract to carry to destination. He will be liable unless he contracts to carry *only on his own line.* Receiving freight for shipment to a point beyond his own line is, prima facie, an agreement to carry to that point, and it is necessary, in order to escape liability, that he should stipulate that he is only to carry on his own line. [McCann v. Eddy, 133 Mo. 59; Bank v. Railroad, 72 Mo. App. 82; Marshall & Antles v. Railroad, 74 Mo. App. 81.]"

In Dimmitt v. Railroad, 103 Mo. 440, which was followed and approved in Nines v. Railroad, 107 Mo. 475, it was said that a contract by this railroad company, limiting its liability to loss or damage occurring on its own line, was equivalent to an agreement only to carry to the terminus of its own line; but it will be observed in the case of McCann v. Eddy, supra, which, after an exhaustive review of the entire question, was

approved by the Supreme Court of the United States, 174 U. S., supra, the dictum in the Dimmitt case, herein, was disapproved, in most emphatic terms. The court said, in the McCann case:

"The dictum of the court in the Dimmitt case to the effect that an agreement that a carrier should only be liable for loss or damage occurring on its own line is equivalent to an express contract to carry the property only to the terminus of its own line, can not be taken as the law of this case, where there is an express contract and also an agreement for non-liability. Where the original undertaking is in doubt, such an agreement might be evidence of the intention of the parties in respect thereto. This question is not involved here and need not be decided. We can not, therefore, give such an interpretation to the statute as would permit a carrier to contract for a through shipment and at the same time exempt himself from liability on account of the negligence of connecting.carriers. Such an interpretation would in effect operate as a repeal of the vital provisions of the law which declares a conclusive liability in such case."

In the recent case of Marshall & Michel Grain Co. v. Railroad, 176 Mo. 480, decided at the last term of this court, BURGESS, J., in an exhaustive review of all the authorities treating of this subject, expressly and unqualifiedly approved the interpretation of this statute by this court and by the Kansas City Court of Appeals, herein cited.

The evident purpose of the lawmaking power, by the enactment of this section, was to simplify the contract for shipment, requiring it to be either a certain and unambiguous contract agreeing to transport the property of the shipper simply over the line of the receiving company, or one for through carriage over connecting lines to the point of destination. The parties are left free to make their contracts in respect to this shipment. If the former is adopted, if the loss occurs

on the connecting line, the shipper knows when he makes his contract, to whom he must look for such loss; but if the latter is adopted, or if the transportation company receives the property for shipment to a certain point of destination beyond its line, it is equally clear, under the statute, to whom the shipper looks to for compensation for any loss which may occur, either over its own or the connecting line. It follows that, while the statute does not in terms, it does in effect, render unavailing, when the goods are once received by the railroad company for through shipment, any exception to the liability fixed by the statute, for nonliability for loss over the connecting line. Upon the goods being presented for shipment, is the time that the burden is cast upon the transportation company to determine what risks it will assume; if the goods are received for through transportation beyond its line, the statute fixes its liability. If the goods are received and the contract for transportation ends with the line of the company, the contract will control; but the clear purpose of the statute under discussion, and that is the effect of it as interpreted by the court, is to render inoperative .exceptions as to non-liability as to goods received for through carriage. In other words, railroad companies can not have a joint traffic arrangement and say to the shipper, "Yes, we will receive your property and ship it to the point of destination beyond our lines; but will only be responsible for loss occurring on our own line." This statute does not deprive the parties of any legal right to make a contract, but simply indicates the form of the contract, after it is made. The distinction is clearly drawn by the Supreme Court of the United States, in Railroad v. McCann, supra. It says, quoting from the case of Railroad v. Tobacco Co., 169 U. S. 311:

"The distinction between a law which forbids a contract to be made and one which simply requires the

contract when made to be embodied in a particular form, is as obvious as is the difference between the sum of the obligation of a contract and the mere instrument by which their existence may be manifested. The contract is the concrete result of the meeting of the minds of the contracting parties. The evidence thereof is but the instrument by which the fact that the will of the parties did meet is shown.''

The exceptions undertaking to limit the liability of the appellant to the loss over its own line, can not avail it in this proceeding.

The testimony upon which this case was tried in the circuit court indicates clearly the receipt of the property by appellant, for through shipment. The burden rested upon it to have the contract conform to the requirements of the statute, and if its responsibility was to be limited, it could only be done by limiting its liability, not to the loss occasioned occurring on its own railroad, but by a limitation of the transportation of the goods to the end of its own line, by certain and unambiguous terms, expressed in the contract.

This was not done, and the judgment should be affirmed, and it is so ordered.

All concur.