THE MISSOURI PACIFIC RAILWAY COMPANY v. HENRY BADEN.

No. 16,092.

SYLLABUS BY THE COURT.

RAILROADS—*Connecting Carriers—Statutory Liability of Receiving Carrier—Limitation by Contract.* In Missouri there is a statute providing substantially that when property is received by a common carrier to be transported from one place to another or where it issues receipts or bills of lading it shall be liable for any loss, damage or injury to such property caused by its negligence or the negligence of a connecting carrier to which such property may be delivered or over whose line the property may pass. Under this provision a contract was made by a railway company in Missouri for a through shipment of goods from a station in Missouri on its own line, and also over that of a connecting carrier, to a destination in this state, and the goods not having been delivered the railway company claimed that the loss occurred on the line of the connecting carrier and that because of a clause in the bill of lading purporting to limit its liability to loss or damage occurring on its own line it was not responsible for the loss of the goods shipped under the contract. *Held,* that as the initial carrier contracted to carry the goods through to destination it became liable under the statute quoted for the negligence

of the connecting carrier, notwithstanding the clause purporting to limit its liability to the loss occurring on its own line.

Error from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed June 5, 1909. Affirmed.

*J. H. Richards,* and *C. E. Benton,* for the plaintiff in error; *Zeigler & Dana,* of counsel.

*Stanford & Stanford,* for the defendant in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: To recover the damages sustained by the loss of parts of two consignments of tobacco delivered to the Missouri Pacific Railway Company for shipment to two agents of his in Independence, Kan., Henry Baden brought this action against the railway company. When the tobacco was delivered to the defendant there were issued dray tickets, or receipts, in connection with bills of lading. These receipts were substantially alike, and the following constitutes the material parts of one of them:

"No. E. 66732. ST. LOUIS, MO., 5-22-1903. Duplicate.

RECEIVED, IN GOOD ORDER, FROM
LIGGETT & MYERS-DRUMMOND BRANCH,
CONTINENTAL TOBACCO CO.

By Mo. P. c/o........*A. T. & S. F. at K. C. Mo.*........
Consigned to.............*J. N. Adams*............
At............ *Independence* ....................
Via..................... *Kans.* ................
Care of ...................................
*Subject to conditions of company's bill of lading.*

[Then follows the statement of the articles shipped, with the weight and rate charged on each package.]

> THE MO. PAC. RY. CO., May 22, 1903.
> The above property received on this dray ticket, subject to conditions of company's bill of lading.
> T. P. ADAMS, *Agent.*

FREIGHT CHARGES PREPAID."

Payment was made of the full amount of the freight charges from St. Louis, Mo., to destination at Independence, Kan. The goods were shipped on May 22, 1903, and should have been received at destination within five days from the time of shipment. A part of each consignment was delivered at destination in the following August, but the greater part of the goods so shipped never reached the consignee, and this action was brought to recover $451.95, the value of the goods lost or destroyed.

The defendant denied generally its liability, and alleged a delivery of the goods to its connecting carrier, the Atchsion, Topeka & Santa Fe Railway Company, at Kansas City; and the further claim was made that if the goods were damaged or destroyed the damage or failure to deliver was caused by the act of God, at Kansas City, Mo. There was a contention, too, that under the bill of lading issued by the defendant the remedy for any loss or damage should be against the particular carrier in whose custody the goods were at the time of the loss, and that the defendant assumed no other responsibility for the safety of the goods or their safe carriage than might be incurred on its own line.

On the trial the jury found for the plaintiff, awarding him the amount of his claim, and the defendant now insists that the evidence in the case did not justify that result. After producing the receipt and bills, for the purpose of showing through shipments of the tobacco from St. Louis, Mo., to Independence, Kan., and testimony that plaintiff paid to the defendant the full freight charges for the through carriage of the goods, there was introduced in evidence a statute of Missouri which reads as follows:

"Whenever any property is received by a common carrier to be transferred from one place to another, within or without this state, or when a railroad or other transportation company issues receipts or bills of lading in this state, the common carrier, railroad or transportation company issuing such bill of lading

shall be liable for any loss, damage or injury to such property, caused by its negligence or the negligence of any other common carrier, railroad or transportation company to which such property may be delivered, or over whose line such property may pass; and the common carrier, railroad or transportation company issuing any such receipt or bill of lading shall be entitled to recover, in a proper action, the amount of any loss, damage or injury it may be required to pay to the owner of such property, from the common carrier, railroad or transportation company, through whose negligence the loss, damage or injury may be sustained." (Rev. Stat. Mo., 1889, § 944.)

Several decisions of the supreme court of Missouri interpreting this statutory provision were received in evidence, including *McCann v. Eddy,* 133 Mo. 59, *Dimmitt v. The Kansas City, St. J. & C. B. Ry. Co.,* 103 Mo. 433, and *Western Sash & Door Co. v. C. R. I. & P. Ry. Co.,* 177 Mo. 641. The testimony shows that the defendant contracted to carry the tobacco from St. Louis, Mo., to destination at Independence, Kan., and under the statute it made itself liable for the negligence of connecting carriers as well as its own.

It is contended by the defendant that the loss was not on its line, and that by a provision in the bill of lading issued in connection with the receipt already mentioned its liability was restricted to such loss or damage as occurred on its own line. The provision referred to is as follows:

"And it is further specially understood that for all loss or damage occurring in the transit of said property the legal remedy shall be against the particular carrier only in whose custody the said property may actually be at the time of the happening thereof, it being understood that the Missouri Pacific Railway Company, leased, operated and independent lines, in receiving the said property to be forwarded as aforesaid, assumes no other responsibility for its safety or safe carriage than may be incurred on its own road."

The defendant could not abrogate the statute by the insertion of such a provision in the bill of lading.

Railway Co. v. Baden.

Under the statute if the defendant had only contracted to carry the tobacco to the end of its own line its liability would have ended there, but having made a contract for a shipment to destination it must respond for the negligence of the connecting carrier. That the defendant could not relieve itself from liability by the provision relied on is well shown by the decisions of the supreme court of Missouri as to the meaning and effect of the statute. In *McCann v. Eddy*, 133 Mo. 59, the same question was fully considered. It was said:

"We can not, therefore, give such an interpretation to the statute as would permit a carrier to contract for a through shipment and at the same time exempt himself from liability on account of the negligence of connecting carriers. Such an interpretation would in effect operate as a repeal of the vital provisions of the law which declares a conclusive liability in such case. The statute does not undertake to change the law in respect to liability of a carrier for his own negligence, but to extend it to connecting carriers as well and declare a liability for negligence without regard to which was in fault.

"Under these views of the law no difficulty is found in giving construction to the contract. The agreement to carry from Stoutsville to Chicago is absolute and unconditional. The thirteenth condition or covenant can only be regarded as an attempt, on the part of defendant, to relieve itself from the responsibility of answering for the negligence of the carrier by which it undertook to complete the contract. The statute forbids such a qualification of the contract." (Page 69.)

That case was taken to the supreme court of the United States, where the validity and force of the statute was examined, and that court held that the statute as interpreted by the supreme court of Missouri is not repugnant to the constitution of the United States. (*Missouri, Kansas & Texas Railway v. McCann*, 174 U. S. 580.)

In *Marshall & Michel Grain Co. v. K. C., F. S. & M. Ry. Co.*, 176 Mo. 480, a railway company issued a bill of lading for a shipment of goods beyond its own line

and to a point in another state, and received therefor the entire freight charge. In the bill of lading was the stipulation that the responsibility of the railway company should not extend beyond its own line, and the court said:

"In that case it is held that in a case where property is received by a carrier for transportation from one place to another, such carrier may be held liable for the negligence of any other carrier to which such property may be delivered, unless it *limits its duty* and obligation to transportation over its own route, which it may lawfully do, but that such carrier can not contract for a through shipment, as in the case at bar, to a point beyond its line, and at the same time exempt itself from liability for the negligence of the connecting carrier which completes the transportation." (Page 490.)

In another Missouri case the prior decisions as to the effect of the statute were summed up in this way:

"A carrier receiving freight destined beyond its own line may stipulate that it will not be liable for negligence of the connecting carrier if its contract of carriage is limited to the end of its own route, but if the receiving carrier's contract is to transport the freight to point of destination it can not so limit its liability, and must answer for the negligence of the connecting carrier. These cases further hold that the receiving carrier in receiving freight and issuing a bill of lading therefor to a point beyond its own line *prima facie* agrees to carry to such point, and to prevent such a construction of the contract it will be necessary that it stipulate that it is only to carry to the end of its own line." (*Bank v. C. G. W. R'y Co.*, 72 Mo. App. 82, 88.)

In a later case, involving a through shipment beyond the line of the receiving carrier, the supreme court of Missouri reviewed the former decisions and held the initial carrier liable for the negligence of the connecting carrier. Among other things it was said:

"It follows that while the statute does not in terms, it does in effect, render unavailing, when the goods are once received by the railroad company for through shipment, any exception to the liability fixed by the stat-

ute for non-liability for loss over the connecting line. Upon the goods being presented for shipment is the time that the burden is cast upon the transportation company to determine what risks it will assume. If the goods are received for through transportation beyond its line, the statute fixes its liability. If the goods are received and the contract for transportation ends with the line of the company, the contract will control. But the clear purpose of the statute under discussion, and that is the effect of it as interpreted by the court, is to render inoperative exceptions as to non-liability as to goods received for through carriage. In other words, railroad companies can not have a joint traffic arrangement and say to the shipper, 'Yes, we will receive your property and ship it to the point of destination beyond our lines, but will only be responsible for loss occurring on our own line.' This statute does not deprive the parties of any legal right to make a contract, but simply indicates the form of the contract, after it is made." (*Western Sash & Door Co. v. C. R. I. & P. Ry. Co.,* 177 Mo. 641, 657.)

It is argued that the Missouri court in *Dimmitt v. The Kansas City, St. J. & C. B. Ry. Co.,* 103 Mo. 433, 440, held that a provision similar to the exception in this case should be treated as an agreement to carry the goods only to the end of its own line. Some of the language in the opinion in that case affords some reason for this argument, but the supreme court afterward declared the statement was dictum and expressly repudiated the view, holding that when a contract for a through shipment was made the company could not exempt itself from liability for the negligence of the connecting carrier. (*McCann v. Eddy,* 133 Mo. 59, 68; *Western Sash & Door Co. v. C., R. I. & P. Ry. Co.,* 177 Mo. 641, 655.)

The proof in this case was to the effect that there was a through shipment by which the defendant undertook to carry the tobacco to destination. The jury, under instructions of the court, in effect found that there was a through contract under which the tobacco was received for shipment. The tobacco was not

transported and delivered within a reasonable time after it was received for shipment, and the greater part of it has never been delivered. The plaintiff therefore made a *prima facie* case under the rule of the cases cited, and the defendant became liable for the loss whether it occurred by reason of its negligence or that of the connecting carrier. As stated in *Western Sash & Door Co. v. C., R. I. & P. Ry. Co.*, 177 Mo. 641, "if the goods are received for through carriage, the shipper looks alone to the railroad company issuing the receipt, and the receiving company must seek its remedy for loss against the connecting carrier." (Page 654.)

It is further contended that there is no liability on the theory that the goods were destroyed by the act of God in the flood at Kansas City. Upon this issue the burden of proof rested upon the defendant. That flood occurred on May 30, 1903, whereas the goods were received for shipment at St. Louis on May 22, 1903. According to the testimony a reasonable time for shipment of the goods from St. Louis, Mo., to Independence, Kan., was from three to five days, and the flood did not occur until eight days after the goods were received by the defendant. It is stated that prior to May 30, 1903, there was a general congestion in the yards in Kansas City, due in part to the heavy business, and also to the bad condition of the tracks. Although there is some testimony as to the general condition at Kansas City about the time of the flood, there is no proof showing that the car containing the tobacco was in the flood or affected by it, and there is the other circumstance that portions of both shipments of tobacco were received in good order some time in the following August. Some interrogatories were submitted as to where the goods were when they were lost, and the jury answered that there was no evidence to show where the goods were lost nor in what manner they were lost or destroyed. In view of the testimony it can not be said that a mistake

was made by the jury in failing to find that the tobacco was destroyed in the flood.

Complaint is made of the instructions, but an examination of them shows that the court closely followed the doctrine laid down in the cases cited herein. No reversible error is found in any of the rulings in charging the jury.

The judgment of the district court is affirmed.